HURST v. BAR RULES COMMITTEE OF THE STATE OF ARKANSAS.

4-6172                                                    155 S. W. 697

Opinion delivered October 20, 1941.

1102

*Jameson & Jameson,* for appellant.

*John K. Butt,* for appellee.

S. M. CASEY, Special Justice. The appellant, George A. Hurst, has appealed from a judgment of the Washington county circuit court, rendered on May 24, 1940, finding him guilty of gross, unprofessional and unethical conduct as an attorney at law, and canceling his license to practice law in the courts of this state, and barring him from engaging in the practice of law in this state. This order was effective on the 31st day of May, 1940.

The charge of which he was found guilty was the withholding of funds from a client who was entitled to them.

The present proceeding was begun by filing in the circuit court a complaint by the Bar Rules Committee and the prosecuting attorney of that district. In the complaint it was alleged that appellant and one Kelsey Norman, a practicing attorney of Joplin, Missouri, were

employed by one Dora Keen in her capacity as guardian of her two minor children by a former marriage, Clarence Perryman and William Perryman, to bring a suit against the J. H. Phipps Lumber Company in the circuit court of Washington county to recover damages for personal injuries sustained by said minors in or about the plant of said lumber company; that the terms of the agreement made with said attorneys were that they should receive a fee for their services of one-half of all sums recovered, and that it was further understood and agreed by said attorneys, as between themselves, that they should share equally in such fee or compensation. An action was brought by said attorneys against the lumber company which resulted in a verdict and judgment in favor of the guardian, Mrs. Keen, in the sum of $1,000; that later said judgment and interest, in the sum of $1,030 with the costs of the suit, was paid into the office of the clerk of the circuit court, in October, 1937—the date alleged in the complaint was October 19, but the evidence shows it was paid October 9; that after the judgment was rendered and before it was paid into court, Kelsey Norman elected to waive all claim that he had against the recovery for his services, and to donate the same to said guardian for the benefit of said minors, and thereupon, on August 10, 1937, he did execute an assignment for his share of the recovery to Dora Keen, and said assignment being in the form of a letter addressed and mailed by him to her at her place of residence, and by a similar letter or notice mailed on the same day to appellant, George A. Hurst, at Fayetteville, Arkansas; that notwithstanding said assignment by Kelsey Norman and notice given to George A. Hurst, Hurst did on, or about the 15th of April, 1938, collect and receive from the clerk of the circuit court of Washington county the full sum of $515, being one-half of the judgment and interest, and did appropriate the whole thereof to his own use, and has refused to pay to the said Dora Keen, as guardian, the sum of $257.50 so donated and assigned to her by the said Kelsey Norman, although such payment had been requested by both Dora Keen and Kelsey Norman; that the Bar Rules Committee, after a full hearing of said matters, including a state-

ment by defendant Hurst, as to his reasons for withholding and appropriating said funds, did find that said alleged reasons furnish no reasonable justification or excuse for such conduct on his part.

To this complaint the defendant made express denial, and objected to the jurisdiction of the court, because he alleged that the court had adjourned at the regular October, 1939, session to a day in advance of the day it elected to try defendant, and hence could not legally convene prior to that day.

The record is somewhat confusing as to just when and how this case was finally tried. The judgment entered recited at the beginning that it came on to be heard on the 2d day of April, and the docket entries show that the hearing was had on that day, and on April 2, the case was set down for fixing punishment April 16. Then, on April 16, the docket entry shows the defendant filed a motion to continue for further hearing, and this motion was granted. The file mark on this motion, according to the transcript, is May 24.

This last motion was granted, and after several short adjournments the case was taken up May 24, and further evidence was taken, beginning on page 135, and continuing to page 252 of the transcript, or more than was taken at the first hearing, April 2. The court denied the motion for new trial, and judgment was entered, as heretofore noted.

Defendant then filed another motion for new trial, on June 20, which was overruled, and from which this appeal is taken.

Defendant objected strenuously to the trial of this cause on April 2, for the reason that, as he claimed, the record showed that the court had adjourned to April 21. A considerable hearing was had on this matter later, and a *nunc pro tunc* order entered, and this was brought into record after the appeal was filed, through a writ of certiorari. Much argument is made by the appellant, and much testimony was taken regarding this apparent lapse in the term, but, as we view it from a fair consideration of the evidence of the trial judge and the clerk, the court was adjourned from January 15 to April 2, and while the

docket entry apparently showed April 21, this was explained by the judge that this was caused by misreading his writing, and that a comma, which had been made long, had been mistaken for a figure one.

In view of the well-known fact that lawyers as a rule are noted for their bad writing, and we presume that judges would not be exempt from this charge, we think this a reasonable explanation, and since it further appears from the whole record that the appellant was given a full hearing, and allowed to introduce all of his evidence before the final judgment was rendered, or at least before the motion for rehearing was finally determined, this was not prejudicial to his rights.

It would be unfortunate if after all the time, efforts, and expense incurred in this trial by both parties, it should be determined or cast out of court because of a technicality such as this, especially, as we say, since it was shown that the defendant was allowed a full and complete hearing.

We might observe here before passing to the merits of the case, that much of this evidence was irrelevant and incompetent, some admittedly so, but we have read it all, and as this appeal comes on *de novo*, this court considers only such evidence as is competent, yet we have given appellant the benefit of the doubt, and have considered all of it that he introduced, and disregarded that that was introduced over his objections where it was apparently incompetent.

No useful purpose would be served, and it would extend this opinion unduly to abstract all of it, but we have read it carefully and will refer to such portions of it as may be necessary.

Coming now to the merits of the case, it is clear that the decision must depend or rest upon the good faith of the appellant in his claim that the reason that he did not pay the $257.50, which was Norman's one-half of the fee in the case of Dora Keen, guardian of her minor children, v. Phipps Lumber Company, was that Norman owed him an amount equal to, or in excess of this sum. The fact that Mrs. Keen received only $41.50 as her part after paying the doctors, hospital and nurses fees for her chil-

dren did not seem to weigh with, or influence appellant as it did the witness Norman, and appellant had no compunctions or qualms of conscience on this score, but justified his conduct in taking the full fee somewhat after the fashion of another in a famous trial, "because it was nominated in the bond," that is, because his contract called for it.

The argument that the contract with the Keens was made in appellant's name, and before Norman was called into the case, as we view it, is not material, because he admits that Norman was entitled to one-half of this fee, and it is not denied that Norman participated in the trial of the case.

Now, after the judgment was rendered, but before it was paid, Norman testified that he wrote a letter to appellant, on August 10, 1937, copy of which appears in the record, in which he advised against an appeal in the cause, and in that letter he said to appellant that in view of the very small verdict rendered, he did not personally feel like accepting any part of the fee, and that his portion of the fee could be turned over to Mrs. Keen, and stated in this letter that he had so written Mrs. Keen.

There is also a copy of the letter that he claimed to have written Mrs. Keen on the same date, August 10, 1937, in which he confirms his letter to appellant, and stated that he did not intend to participate in an appeal of the case, and that he was donating to her his share of the fee, and if the case was settled that she could have Mr. Hurst turn over to her his share of the fee.

Mrs. Keen testified that she received the letter that Norman said he wrote her, but that she had lost it, and that she never showed it to any one.

Mr. Norman is corroborated by his stenographer, who read from her notes, that she had taken such letter by dictation and had transcribed it, though she had no personal knowledge that same had been mailed.

Appellant's contention is that this letter of Norman was written after he had written Norman a letter on July 12, in which he claimed that Norman owed him for some fees growing out of the relations between Norman and another attorney and himself, and his theory of the

case is that Norman decided to prevent appellant from collecting the amount that he claimed Norman owed him out of this fee in the Keen case, and had assigned his (Norman's) interest to the Keens for that purpose.

Norman testified that he did not receive the letter which appellant wrote him, dated July 12, 1937, enclosing the check in the Demo case, for $164.84, until August 12, or 30 days after the date of the letter, and two days after the date of his letter of August 10, that he had written appellant and Mrs. Keen assigning to her his interest in the fee.

Norman is corroborated in this by the check which was introduced, dated July 12, and shown deposited in the bank at Joplin, Missouri, where it was drawn by appellant, and which was marked paid in stencil by the bank, August 12, 1937.

In view of the well-known financial condition of lawyers, as a rule, and their pressing need of any fees that might come to them (and the record here does not disclose that these attorneys were an exception to the rule in this respect) we think it improbable, to say the least, that Norman would have held this check dated July 12, for 30 days before depositing it. Norman said he had written appellant on July 20, and asked him about this fee in the Demo case, and introduced a copy of this letter, and he says it was after July 20, or on August 12, that he received this letter from appellant dated July 12. There is no reason shown why this letter, if written July 12, should not have been received by Norman within two or three days, or at least before July 20, when he wrote appellant requesting payment of this fee in the Demo case. Appellant denied getting the letter of July 20, and also denied getting the letter that Norman said' he wrote and mailed to him on August 10, stating that he had assigned his part of the fee to Mrs. Keen.

We think, however, that the evidence corroborates the theory that appellant did receive the letter that Norman wrote him on August 10, and copy of letter he wrote Mrs. Keen on the same date, assigning her his interest in this fee and that appellant then formed the purpose and intention to claim that Norman owed him some fees,

and on account of that he would have the right to take this whole fee in the Keen case, which he later did, although he waited from October 9, 1937, until April 8, 1938, nearly six months before he took this money from the clerk, a fact of some significance for the same reason as noted above in referring to improbability that Norman would have held the Demo check for 30 days before cashing it.

A fair consideration of the claim of appellant that Norman owed him fees growing out of the relations between them and a third lawyer, Mikel of Ft. Smith, who testified in the case, and denied appellant's claim, does not show that appellant had any definite or valid claim for unpaid fees against Norman. The evidence of this, without detailing it, is very meager and unsatisfactory.

There was, as we have said, a great deal of evidence introduced that was incompetent, especially the correspondence between appellant and the witness, Norman, some of which shows a rather sordid situation and condition existing there at that time, growing out of personal injury suits, and suits for damages, ranging all the way from suggestions as to election of judges, who might try these cases, and other matters, that, to say the least, did not reflect great credit or contribute to the administration of justice.

In one of the letters introduced by appellant, which he received from Norman, Norman gives his reasons as to why he had settled the Tosh case, thus: "This unfortunate settlement was induced by two compelling reasons, to-wit: Tosh was unable to get any witnesses to prove his case, and he had gone back to work," either of which we should say was sufficient.

## The Law of the Case

This court in several cases prior to the adoption of Amendment No. 28 and the promulgation of rules by this court under the authority of this amendment has sustained the power to disbar an attorney as inherent in all courts to protect the courts and the public, as well as to maintain the honor of the profession, from the early

case of *Beene* v. *State,* 22 Ark. 149, to *Maloney* v. *State,* 182 Ark. 510, 32 S. W. 2d 423.

In the Maloney case, as well as in the Beene case, this court quoted with approval the language of Chief Justice MARSHALL in the celebrated case relating to the disbarment of Aaron Burr, 9 Wheaton 529, 6 L. Ed. 152.

Without quoting that language again in full, the principle announced was that the profession of an attorney is of great importance to him as an individual, and the prosperity of his whole life might depend on its exercise, and the right to exercise it ought not to be lightly or capriciously taken from him. On the other hand, it is important that the respectability of the bar be maintained, and that its harmony with the bench should be preserved, and that while the discretion of the court in the first instance should be exercised with great moderation and judgment, yet it must be exercised, and no other tribunal can decide in a case of removal from the bar, with the same means of information as the court itself, and hence a revising, or appellate tribunal will always feel the delicacy of interposing its authority as against the lower court, and will do so only in a plain case.

Now, since the adoption of the rules by this court, and the appointment of the Bar Rules Committee to act under these rules, it becomes the duty of the Bar Rules Committee ''to make investigation of all complaints of professional misconduct that might be brought to its attention, in the form of an affidavit, or in response to any information which any member of the committee may have.'' They are required to give the accused attorney an opportunity to explain or refute the charge, and after a hearing, if they think the facts warrant it, it is their duty to cause a complaint to be filed in the court against the attorney, who, after reasonable notice, not less than 20 days, is entitled to a trial before the circuit judge or chancellor. This throws an additional protection around the attorney and thus before he is convicted, he has had the opportunity of a hearing before two tribunals.

Therefore, it seems to us that, in view of the present rules and procedure relating to disbarment, this court

on appeal should give even greater weight to the findings of the lower tribunal than was held proper in the cases we have referred to above.

Also the trial court has the added opportunity of observing the demeanor and conduct of the witnesses while testifying, a fact of great importance in determining the truth in any given case. Indeed this is always recognized by appellate courts, and is one of the reasons why great weight is given by appellate courts to the findings of a jury, as well as a court or judge sitting as a jury, where oral testimony is heard.

Trial courts in instructing juries always tell them that they have a right to observe the demeanor and conduct of the witness on the stand in testing his credibility. It is impossible in looking at the written pages to form as correct a conclusion as to the truth or falsity of evidence in a case, where the testimony is in sharp dispute, as where the witness can be seen and heard.

Again it has been held by this court that proceedings for disbarment of an attorney are not criminal but civil in their nature, and as such are governed by the rules applicable to all civil actions, and hence it is required that the material allegations in such cases be established only by a preponderance of the evidence, and not beyond a reasonable doubt. *Wernimont* v. *State,* 101 Ark. 210, 142 S. W. 194, Ann. Cas. 1913D, 1156; *Maloney* v. *State, supra.* Of course, if there was evidence of prejudice or feeling shown against a defendant, this court should consider that in passing on the appeal, but in this case the record shows that the trial judge was patient and considerate and that he permitted the defendant to introduce all evidence that he apparently had, and at no time showed any partiality or feeling as we view the record.

It is probably not necessary to say that it is a delicate and not a pleasant duty for the courts to pass upon the conduct of a member of the legal profession. It is made more unpleasant because of the fact that often others than the defendant are greatly embarrassed and suffer much thereby, but this should not weigh or press against the duty of the court in these cases to pronounce such judgment as they believe the facts and law warrant.

However, after mature deliberation, and with the full sense of our responsibility and delicacy, in reviewing the action of the lower court, we are of the opinion that the judgment of disbarment should be modified subject to the following condition: It was not shown that the defendant was guilty of unprofessional conduct of a continuing character, but he was found guilty only of a single offense. The office of an attorney is his property. It is the capital from which his income is derived, and we believe that the ends of justice and the atonement of appellant for the offense committed will be attained by his suspension from the practice of the law for a period of one year from the date that this judgment becomes final in this court, provided, however, that this modification of the judgment of the lower court is subject to the further condition that appellant will pay to Mrs. Keen, as guardian of her children, the sum of $257.50, the amount of the fee that Norman directed be paid to her.

With this modification the judgment is affirmed.

GREENHAW, J., disqualified and not participating; SMITH, HUMPHREYS and MEHAFFY, JJ., dissent.

SMITH, J. (dissenting). The majority stress the findings of fact by the court below, and say the testimony is sufficient to support the findings of the trial court, inasmuch as this is a civil proceeding. That rule would ordinarily be applied, but we think it is inapplicable here, for the reason that the case was decided upon an erroneous theory.

Appellant sought to introduce a letter, which Norman admitted receiving, relating to the controversy between Norman and appellant over the fee in the Treat case, which was one of the numerous cases these attorneys had tried together. Upon objection being made to the admission of this letter, the following colloquy occurred: "Q. I hand you here a paper and let you read it. A. Yes, I got this letter from you. I have the original. Yes, you wrote me that letter and I answered the letter. You have my answer.. Mr. Hurst: I want to introduce that. Mr. Butt: The plaintiff objects to its introduction, Your Honor, The Court: I don't see that it has anything to do

with this matter. Mr. Hurst: It is absolutely contradictory of his own sworn statement, his owing me anything, or he claimed he owed me anything, giving me a defense, and I held the money back that he did owe me, calling his particular attention to it. The Court: Suppose he did owe you ten thousand dollars. That wouldn't give you any right to hold this money. Mr. Hurst: Yes, sir, it would. Him owing me money and having money in my hands belonging to him, certainly I have a right to hold it. The Court: Not the way I see it. I am going to let it go in.''

Obviously, the letter was admitted merely for the benefit of the record only, but was not regarded or considered by the court, for the reason that a controversy between appellant and Norman over the state of the account between them did not give the appellant the right to withhold money which Norman had given to Mrs. Keen. We think this was error, and one which destroys and annuls the effect which would otherwise be given to the finding of the court.

The case is an intricate one, and involved many transactions between three attorneys, Mikel, of Fort Smith, and Norman and appellant. Mikel testified as follows: ''I would like to make this a little bit plainer, Your Honor. At the time I met Mr. Hurst and Mr. Norman, I was under the impression that they were both lawyers working together just like a firm. At the time I talked to them there wasn't any question brought up about what the fee would be, and I turned over several cases to them. Later on, when the first case was settled, well, the question of fee naturally was brought up. Mr. Hurst at that time claimed he was entitled to one-third of the fee. Just one case was settled and I had several other cases with them. I had gone to Mr. Norman and wanted him to help me in these cases, and Mr. Hurst, I found out, was in it, and claimed that he had one-third of the fee coming to him, and rather than have any quarrel or falling-out with him, I gave him one-third of the fee.''

Appellant insisted that in the cases in which Mikel had employed him and Norman he was entitled to one-third of the fee, and that Norman had not properly ac-

counted to him for this share. There were still other cases, in several of which Mikel was not concerned, which appellant took to Norman, in which he and Norman were to have one-half of any recovery to be divided equally between them.

The Keen case was one of these. The contract of employment of an attorney in this case was between appellant and Mrs. Keen. Norman was not a party to it. But he participated in that case under the general understanding for an equal division of the fee when only he and appellant were employed.

The largest judgment recovered in any case under this arrangement was in the case referred to as the Harger case, in which a $4,000 judgment was recovered, and collected by Norman, who remitted appellant $192.22 for his one-third of the fee, and in the letter remitting this check it was explained that expenses had reduced appellant's part to that sum. This division was not satisfactory to appellant. And there was a controversy also over the division of other fees.

This writer does not conceive it to be the province of a dissenting opinion to discuss questions of fact; but, if it were, this opinion would be unduly extended in doing so. Suffice it to say there was a controversy between appellant and Norman as to the state of their accounts, and appellant was insisting strenuously—and, it appears to us, in good faith—that Norman had not fully accounted to him for his share of the fees collected for their joint account.

It was after this controversy had arisen that Norman made what would otherwise appear to be a generous assignment of his share of the fee in the Keen case to the plaintiff in that case.

It may be conceded that appellant was wrong in his contention, and that Norman had fairly settled with him, and that, had he sued Norman, he would have recovered nothing, and that the testimony would sustain that finding. But this is not a suit between Norman and appellant to settle their accounts. It is one of far greater import to appellant. He is charged with collecting money due a client, which he failed and refused to pay over on demand.

But the undisputed testimony is to the effect that appellant paid Mrs. Keen every cent to which she was entitled under her contract with appellant. What he did not pay over to her was Norman's part of the fee in her case which Norman had assigned to her. Appellant's insistence was that Norman should first be just to him before he became generous to his client. It will be remembered that the Keen judgment had been paid. There was nothing further to collect on it. Appellant had made the collection, as he had the right to do, even though Norman had been a party to the contract of employment with Mrs. Keen, which he was not. *Lake* v. *Wilson,* 183 Ark. 180, 35 S. W. 2d 597, 38 S. W. 2d 25.

This case is of far-reaching import, and there may be repercussions which will be regretted. A discussion of the fact that the transactions out of which this prosecution arose occurred before the adoption of the rules which authorized the prosecution may be pretermitted. The fact remains that an attorney has been disbarred because he did not sustain, to the satisfaction of the trial court, his controversy, not with his client, for he had settled with her according to their contract, but with an attorney over the division of fees in numerous cases extending over a period of years. Now, all say that any attorney who receives money belonging to his client, and knowingly fails to pay it over, should be disbarred. He disgraces his profession, and brings reproach upon its members who practice it. But must it be said that an attorney dare not have a controversy with a client, upon the settlement of that relation, for fear that if he fails to sustain his contention, he will be disbarred for failure to pay the client what appears to be the correct balance due between them? We know that many such contentions have arisen, and do arise. The client may not always be accurate and correct, and, perchance, in some case, not even honest, and may not be willing to make a fair and just settlement with his attorney. It would be at great peril to the attorney to resist any claim of the client, if he proved to be in error, and could be held guilty of failing to pay over to the client because of this controversy. Prudence would suggest to

the attorney that concessions, little short of extortions, be submitted to rather than to risk this hazard.

It is my opinion—in which Justices HUMPHREYS and MEHAFFY *concur*—that the judgment disbarring appellant should be reversed, even though a judgment should be rendered against appellant for the half interest in the fee in the Keen case which Norman assigned to his client.