IN RE: PETITION OF Sam L. ANDERSON, Jr., for Readmission to the Bar of Arkansas

92-430                                   851 S.W.2d 408

Supreme Court of Arkansas
Opinion delivered April 5, 1993
[Rehearing denied May 17, 1993.*]

*Holt, C.J., and Dudley, J., would grant rehearing.

*Hargraves & McCrary*, by: *Robert S. Hargraves*, for petitioner.

*Hoover, Jacobs & Storey*, by: *Tucker Raney* and *Letty C. McAdams*, for respondent.

ROBERT H. DUDLEY, Justice. The petitioner was admitted to the Bar of Arkansas in 1980. In 1983 and 1984, while a practicing attorney, petitioner committed a number of felonies. He was charged by the United States Attorney in a three-count indictment filed in United States District Court. He was tried in 1985, and the jury found him guilty on all three counts of the indictment. He was sentenced to three years in federal prison on each count and fined $2,000 on each count. He petitioned this court and asked to unconditionally surrender his license in order to avoid disbarment. On December 8, 1986, by per curiam order, this court unconditionally accepted the surrender of his license.

Petitioner was discharged from parole on October 9, 1990. Three months later, on January 2, 1991, he filed a petition with the Board of Law Examiners asking for reinstatement to the Bar of Arkansas. That Board determines whether, and on what conditions, one should be readmitted to the Bar. The Board held a hearing and, by a divided vote, denied the petition for reinstatement. The conclusion of the Board's finding is as follows:

Mr. Anderson is far along in the rehabilitation process and that he has met all the technical requirements for admission, however, his felony conviction[s] singularly outweighs the positive evidence of the record; that Mr. Anderson has not met his burden of establishing eligibility for reinstatement and his petition is denied.

The petitioner appeals from the Board's ruling. We affirm the ruling.

The facts involved in the crimes for which petitioner was convicted in federal district court are significant to our holding, and, therefore, the counts of the indictment are quoted in full:

### Count I.

On or about November, 1983 and continuing through the end of February, 1984, SAM ANDERSON, JR., the defendant herein, did knowingly and wilfully combine, conspire, confederate and agree with Roger Clinton to possess with intent to distribute cocaine, a Schedule II controlled substance, in violation of Title 21 United States Code, Section 841(a)(1).

The following overt acts were committed in furtherance of the conspiracy:

1. In November, 1983, SAM ANDERSON and Roger Clinton discussed the purchase and distribution of cocaine in the Hot Springs area.

2. In November, 1983, SAM ANDERSON paid Roger Clinton $4,000.00 for cocaine.

3. On or about November 21, 1983, SAM ANDERSON paid $4,000.00 to Roger Clinton and received approximately two ounces of cocaine.

4. On or about December 11, 1983, Roger Clinton travelled to New York City to purchase cocaine for SAM ANDERSON.

5. On or about December 15, 1983, SAM ANDERSON paid Roger Clinton approximately $6,000.00 for cocaine.

6. On or about December 19, 1983, SAM ANDERSON paid Roger Clinton $4,000.00 for cocaine.

7. In January, 1984, SAM ANDERSON paid Roger Clinton approximately $4,000.00 for cocaine.

8. On or about January 19, 1984, Roger Clinton flew to New York City to purchase cocaine for SAM ANDERSON.

9. On or about January 22, 1984, SAM ANDERSON paid Roger Clinton approximately $10,000.00 for cocaine.

10. In February, 1984, SAM ANDERSON and Roger Clinton discussed the purchase of 10 to 15 ounces of cocaine.

11. On or about February 24, 1984, Roger Clinton picked up approximately nine ounces of cocaine from Maurice Rodriguez for delivery for SAM ANDERSON.

All of which acts were in furtherance of the conspiracy and in violation of Title 21 United States Code, Section 846.

## Count II.

Beginning in early May, 1984, and continuing through the end of June, 1984, in the Western District of Arkansas, Hot Springs Division, SAM ANDERSON, JR., the defendant herein, did knowingly and wilfully combine, conspire, confederate and agree with Maurice Rodriguez to possess with intent to distribute cocaine, a Scheduled II controlled substance, in violation of Title 21 United States Code, Section 841(a)(1).

The following overt acts were committed in furtherance of the conspiracy:

1. On or about the middle of May, 1984, SAM ANDERSON and Maurice Rodriguez discussed the purchase of cocaine.

2. On or about May 15, 1984, Maurice Rodriguez received $8,000.00 from SAM ANDERSON to purchase

cocaine.

3. On or about May 16, 1984, Maurice Rodriguez travelled to New York City.

4. On or about May 23, 1984, Maurice Rodriguez returned to Hot Springs from New York City.

5. On or about May 23, 1984, Maurice Rodriguez delivered approximately four ounces of cocaine to SAM ANDERSON.

6. On or about June 4, 1984, SAM ANDERSON gave a German license tag to Maurice Rodriguez to use on a vehicle driven by Rodriguez to Arkansas.

All of which acts were in furtherance of the conspiracy and in violation of Title 21 United States Code, Section 846.

### Count III.

On or about June 20, 1984, in the Western District of Arkansas, Hot Springs Division, SAM ANDERSON, JR., knowingly and intentionally did unlawfully distribute cocaine, a Schedule II controlled substance, in violation of 21 United States Code, Section 841(a)(1).

Another fact that is significant to the holding is that, commencing in 1982, the petitioner served as Roger Clinton's attorney and represented him in a number of matters.

Rule 17 of the Rules of Professional Conduct provides that if a member of the bar is "convicted of a felony . . . under the laws . . . of the United States," disciplinary action, including disbarment, may be taken. Rule 7(d) of the Rules of Professional Conduct provides that a member of the bar may voluntarily surrender his or her license to practice law. Such surrenders of a license are absolute. *In re Webster*, 307 Ark. 40, 816 S.W.2d 612 (1991). Petitioner unconditionally surrendered his license "to avoid unnecessary proceedings," and we unconditionally accepted petitioner's surrender of his license.

This court has the inherent power to discipline an attorney. *Hurst v. Bar Rules Comm.*, 202 Ark. 1101, 1108, 155 S.W.2d 697, 701 (1941). In addition to this court's inherent

power, Amendment 28 to the Constitution of the State of Arkansas expressly gives this court the authority to regulate the practice of law. The constitutional amendment was adopted in 1928 to make it absolutely clear that this court could make rules regulating both the practice of law and the conduct of attorneys. The purpose of the amendment was to protect the public and to maintain the integrity of the courts and the honor of the profession. An attorney's client often entrusts his property, or his liberty, or possibly his life, to the attorney. A position of trust, if not an actual fiduciary relationship, often exists. It is the responsibility of this court to see that the public can maintain that trust in the Bar. We have said the "honor of the profession" is one of the considerations in determining readmission. *Hurst* v. *Bar Rules Comm.* The practice of law is a privilege, not a right. *In re Petition for Reinstatement of Lee*, 305 Ark. 196, 806 S.W.2d 383 (1991). Once a lawyer has lost his license to practice law, either through surrender or disbarment, there is a presumption against readmission. *Hurst* v. *Bar Rules Comm.*

The protection of the public and the honor and integrity of the profession have long been the principal criteria in determining whether a person should be admitted or readmitted to the bar. In the case of *In re Petition of Shannon for Readmission to the Bar of Arkansas*, 274 Ark. 106, 108-A, 621 S.W.2d 853, 855 (1981), we said: "The *overriding considerations* on the question of readmission are the public interest, the integrity of the bar and the courts with due consideration to the rehabilitation of the petitioner with respect to good moral character and mental and emotional stability." (Emphasis added.)

■ Petitioner first argues that the ruling of the Board of Law Examiners is clearly against the preponderance of the evidence. Petitioner's argument is primarily based upon his rehabilitation, but it does not give sufficient weight to the overriding considerations of the public interest and the integrity of the Bar. The finding of guilt on the three counts of the federal indictment demonstrates that the criminal conspiracies entered into by petitioner were lengthy and complex. They were planned and designed by a member of the Bar and were committed with full intent to break the law. Even worse, the petitioner, who was a member of the Bar, entered into a criminal conspiracy with one of his clients, and did so while he was serving as the client's counsel.

Finally, the distribution of cocaine is a most hurtful offense.

As previously set out, the *overriding considerations* for readmission are the public interest and the integrity of the bar. It is indubitable that public confidence in the bar, as well as the integrity of the bar, would be diminished by the readmission of a lawyer who had been convicted of entering into a criminal conspiracy with his client, just as it would be diminished by the readmission of a lawyer who had been convicted of distributing cocaine. Even if confidence in the Bar were not harmed at the local level by this case, and even if the integrity of the bar at the local level were not diminished by this case, both would be subsequently damaged at the state level because the Board of Law Examiners would be obliged to follow the precedent and allow readmission to criminals who had held a law license and who had been convicted of crimes involving their clients.

On the other hand, petitioner has made remarkable progress in his rehabilitation and is to be commended for his efforts. A clear majority of the members of the local bench and bar have given statements that petitioner has acted in an exemplary manner since his discharge from prison, and they ask that he be reinstated, as do a number of local and locally elected state officials and civic and business leaders. However, we give only *due consideration* to rehabilitation. The *overriding consideration* is the public trust and the honor of the profession. In sum, under our established standards for readmission, we cannot say the weighing of factors and ultimate ruling of the Board was erroneous.

The petitioner next argues that the Board of Law Examiners erred in concluding that a felony conviction is a bar to reinstatement. We summarily dismiss the argument because a felony conviction, in itself, will not always prevent reinstatement, and the Board did not so hold. The Board held that the felonies involved in this case and the concomitant public interest and honor of the profession outweigh the petitioner's good efforts at rehabilitation.

The petitioner next contends that three other cases stand in contrast to a refusal to reinstate him, and on a comparative basis he ought to be readmitted. The argument is without merit for two reasons. First, each case must stand on its own, and second, the cases used in comparison are inapposite. The first of the allegedly

comparative cases cited by petitioner involved a member of the Bar who was arrested for possession of a controlled substance, felony hit and run, driving while intoxicated, reckless driving, and refusal to submit to urine analysis. He surrendered his license, but there is no evidence that he was ever *convicted* of any of the charges, not even evidence that he was convicted of a misdemeanor. He was allowed readmission by the Board of Law Examiners.

The second case did not involve either a surrender of a license or a disbarment proceeding. It did not involve an application for reinstatement to the Board of Law Examiners. Rather, it involved a disciplinary proceeding before the Committee on Professional Conduct. In that case a judge was charged with a misdemeanor for contributing to the delinquency of a minor for soliciting sex with a juvenile defendant. The Committee on Professional Conduct suspended that member of the Bar from practice for one year "for a violation of Rule 8.4(b) and 8.4(d) of the Rules of Professional Conduct." Without a license that person was no longer eligible to serve as a judge, and therefore, he could no longer serve in that office. The third case also involved a disciplinary proceeding before the Committee on Professional Conduct and was not a proceeding before the Board of Law Examiners. In that case the Committee on Professional Conduct suspended the attorney from the practice of law for sixty days for not maintaining a trust account of his client's money separate from his own accounts and for using his client's money. Again, none of these three allegedly comparative cases involved a conviction for the commission of a felony, especially one involving a client.

The petitioner's final argument involves a pardon. On November 5, 1991, eleven months after he filed his petition for reinstatement, the then Governor of the State, Governor Clinton, issued a proclamation which the petitioner labels a pardon. He argues that it was a violation of the separation of powers doctrine for the Board to refuse to recognize the legal effect of the Governor's pardon of the felony convictions. We could summarily dismiss the argument because the proclamation is not a full pardon, but rather it is only a pardon conditioned upon "a federal removal of disabilities," and there is no evidence that such federal action has taken place. Similarly, we might decide the issue on the

basis of whether a governor of a state might pardon one of a federal crime, but instead we choose to go to the merits of the issue. We do not have a case of our own that is squarely on point, but we have two cases that give guidance, and other states have decided cases that are on point.

First, we address our cases that give us some guidance. In *State* v. *Carson*, 27 Ark. 469 (1872), we considered whether a pardon operated to restore one convicted of a felony to the office of probate and county judge despite the constitutional and statutory provisions barring felons from holding office. We said that "such judicial officer forfeits his office by conviction of a felony and that no pardon can restore him." *Id.* at 471. In *State* v. *Irby*, 190 Ark. 786, 81 S.W.2d 419 (1935), we had a fact situation almost identical to *Carson*. We wrote:

> While a pardon has generally been regarded as blotting out the existence of guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offense it does not so operate for all purposes, and as the very essence of a pardon is forgiveness or remission of penalty, a pardon implies guilt, it does not obliterate the fact of commission of the crime, and the conviction thereof; it does not wash out the moral stain; as has been tersely said it involves forgiveness and not forgetfulness.

*Id.* at 797, 81 S.W.2d at 424 (quoting 46 C.J. 1192).

The state constitution places the duty and responsibility upon this court to determine who shall be licensed to practice law. Other states have this same separation of powers. In *Hankamer* v. *Templin*, 187 S.W.2d 549, 551 (Tex. 1945), the court wrote, "[T]he governor can forgive the penalty but he has no power to direct the courts to forget the conviction." Regarding the respective powers of the three branches of government, the court in *Scott* v. *Leathers*, 52 S.E.2d 40, 43 (Ga. 1949), wrote, "[J]ust as the legislative may not by statute defeat the constitutional power of the executive to dispense clemency, neither the legislative or the executive may defeat the judiciary's inherent power over attorneys at law." In *re Lavine*, 41 P.2d 161, 164 (Cal. 1935), the court wrote, "[T]he pardoning power does not extend to the reinstatement of an attorney excluded from the practice of law on the order of a court." We agree. The power of the executive

branch to grant pardons does not limit the constitutional power of this court to regulate the legal profession.

In conclusion, the Board of Law Examiners found that petitioner's rehabilitative efforts were outweighed by his commission of the three felonies and the concomitant detrimental effect his readmission would have both on the public trust of the Bar and on the integrity of the Bar. That holding is not erroneous, and is, accordingly, affirmed.

Affirmed.

HOLT, C.J., and HAYS, J., dissent.

STEELE HAYS, Justice, dissenting. I agree with the majority opinion in some respects, in particular that those who come to the bar are bound by a solemn covenant to uphold the law by adherence and by example. A lawyer who rends that covenant in deliberate and material ways risks perpetual disbarment. Even so, I believe the petitioner has made a convincing case for reinstatement, notwithstanding the seriousness of these offenses.

It should first be mentioned that the vote by the Committee could not have been closer — six votes against reinstatement to five votes for. Thus, a vote change of one out of the eleven would have reversed the result. The closeness of that vote bespeaks the strength of the petitioner's case.

Although we review this case *de novo,* the majority opinion largely ignores the evidence presented to the Committee, preferring instead to quote verbatim the three counts of the federal indictment. But those are mere allegations and we know nothing from this record concerning the specifics of the evidence presented in the federal trial of Sam Anderson. It is simply not before us.

That significant omission in the majority opinion makes it incumbent on this opinion to outline the evidence pro and con. The evidence in support of Anderson's application includes the following:

Mr. Neil Pennick, an attorney in Hot Springs since 1982 and currently deputy prosecuting attorney and assistant city attorney, has known the petitioner about five years, attesting to his maturity, sound mental and emotional stability and good moral

character. He expressed the opinion that Anderson recognizes his own accountability and sincerely regrets that he ever got involved with drugs.

Mr. Scott Hickam, an attorney practicing in Hot Springs since 1979, testified that professionally he has found petitioner to be diligent, competent, honest and trustworthy. He has never had reason to question those traits in him. He considers petitioner to be remorseful, progressing from "I wish this wasn't happening to me," to "this is something I should not have done." He never regarded petitioner as a drug distributor, but involved in exchanging drugs within a certain social group. He considers him a much different person today than seven or eight years ago. As chair of the Garland County Unauthorized Practice of Law Committee he was aware of no complaints that any actions by Anderson crossed the line between lawyer and paralegal. He had no reservations at all concerning Anderson's moral character or emotional stability nor did he know of any opposition in the community to his reinstatement.

Kristi Anderson testified that she and Sam Anderson married in December 1989 after dating some twelve months. She is a graduate of Ouachita Baptist University and a licensed school teacher with five years experience. They have an infant daughter. Mrs. Anderson testified to the routine of their family life and to petitioner's work habits and domestic responsiveness. She said there were no drugs in their home and never would be.

Sam Anderson testified that since his release he has been employed as a paralegal in his father's law office, and has adhered to the disciplines outlined in articles on that topic in publications of the Arkansas Bar Association and Arkansas Trial Lawyers Association. He maintains he used cocaine socially for approximately six months and had voluntarily ended the usage some four or five months before his indictment in November of 1984. He has kept abreast of developments in the law and has undergone random bi-weekly drug testing over the past year under the supervision of Dr. John Simpson. The results were consistently negative except for some prescribed medication associated with back surgery. He outlined the events of his drug abuse and professed to regret the mistakes of that experience and to accept full responsibility for them.

Donald R. Williams, United States Probation Officer for sixteen years, a resident of El Dorado, testified that he supervised petitioner upon his release from prison. He was present at petitioner's trial and viewed his drug use as primarily social, involving a circle of friends in a trendy lifestyle, trading among themselves. He saw no indication that petitioner was engaged in drug traffic. He likened it to one person buying a keg of beer with the others sharing the cost. There was, he said, no indication that petitioner was addicted. The conditions of petitioner's parole included drug testing, and regular reporting to the probation office which monitored his activities. There were never any negative reports or tests and Anderson was prompt and conscientious in all that was required of him. Officer Williams considered Anderson to be honest, hardworking, dependable and trustworthy and he recommended him for reinstatement. He testified that he had asked to appear on behalf of petitioner, which he had done only twice previously in sixteen years of service. He said there was no evidence of substance abuse prior to November 1983 or after May 1984.

Dr. Douglas A. Stephens, clinical psychologist, testified to petitioner's emotional and mental stability, characterizing the profile as "very positive," and without negatives. Based on his own observations over many years he saw petitioner as professionally efficient, resourceful and capable and whereas he earlier tended to be impulsive and somewhat immature, he was "much more mature" some eight years hence.

Accompanying petitioner's application are some forty-eight letters from professionals, businessmen and women, civil leaders and officials attesting to the good moral character and stability of Sam Anderson and recommending his reinstatement. The list includes the chief of police, the Garland County sheriff, chief deputy sheriff, two chancery judges, a municipal judge, and state and county officials. Among the supporting documents accompanying the application is a petition signed by fifty attorneys practicing in Garland County pledging their support and endorsement for the reinstatement of Sam Anderson to the bar of Arkansas.

Against that rather imposing array of support stands a single, unsigned letter expressing the view that an attorney who

has been convicted of a felony should never, ever be readmitted to the bar. That, of course, simply restates the question to be decided and otherwise has little bearing on the case. As to the fitness of this petitioner, there is nothing of a negative character beyond the fact of his crime and conviction.

The Committee did not take issue with any part of that evidence and, in fact, gave an implied endorsement to "the positive evidence of the record," concluding by narrow vote that the "felony conviction singularly outweighs" such proof. In reaching an opposing view I am persuaded by the following factors:

1. This offense is not one involving dishonesty, professional conduct, defalcation of funds, or the like, to the pecuniary gain of the perpetrator.

2. The substance abuse involved a span of about six months, ceased voluntarily, and occurred nearly ten years ago.

3. Anderson has paid the penalty exacted by society, satisfied in full the fine imposed and has been conditionally pardoned by the Governor, whatever its legal significance may be.

4. Anderson has satisfactorily complied with all the conditions of his release.

5. Anderson's federal parole officer recommends his reinstatement in the strongest terms.

6. Numerous professional peers attest to Anderson's good moral character and subscribe to his fitness to reenter the practice.

7. Fifty practitioners in Garland County have pledged their unqualified support and endorsement of Anderson's application for reinstatement.

8. The chief of police, county sheriff, chief deputy sheriff and a great many state and county officials endorse Anderson's application without qualification.

9. Anderson, by most indications, has come to terms with his prosecution and conviction, recognizing where the responsibility lies and manifesting a resolve that there be no repetition. A change in lifestyle and the maturing effect of marriage and

parenthood are clearly evidence.

10. No complaints have been filed against Sam Anderson with the Committee on Professional Conduct nor is there any suggestion that he has been less than circumspect while engaged as a paralegal.

In sum, I can see no loss to the integrity of the bar for Anderson to reenter the practice. I suspect he will prove to be more mature and circumspect for his experience.

HOLT, C.J., joins in this dissent.