Sam A. WEEMS *v.* THE SUPREME COURT
COMMITTEE ON PROFESSIONAL CONDUCT

74-143                                          523 S.W. 2d 900

Opinion delivered February 24, 1975
[Supplemental Opinion on Denial of Rehearing
June 16, 1975, p. 685-A.]

*Zachary D. Wilson* and *Stuart W. Hankins*, for appellant.

*John P. Gill* and *Thomas M. Bramhall*, for appellee.

CHARLES M. CONWAY, Special Justice. The appellant, Sam A. Weems, has appealed from a judgment of the Circuit Court of Arkansas County, Northern District, rendered on November 14, 1973, finding him guilty of unprofessional conduct as an attorney at law, canceling his attorney's license and barring him from engaging in the practice of law in this State.

From the entire record including the pleadings and transcript of testimony in this case, we find the pertinent facts to be as follows:

The Supreme Court Committee on Professional Conduct, hereinafter referred to as the "Committee", after receiving information, commenced an investigation of the alleged professional misconduct of Sam A. Weems, a licensed attorney in Arkansas engaged in the practice of law principally in Prairie County and Arkansas County. The appellant was notified of the charges of professional misconduct and that a hearing would be held before said Committee. A hearing was had before the Committee where the appellant appeared in person, the charges were fully presented and thereafter the Committee filed a complaint in the Circuit Court of Arkansas County, Northern Division. A trial being had, judgment was entered against the appellant, which is the subject of this appeal. The complaint alleged three (3) charges of gross professional misconduct against the appellant; Charge I arising from representation of Roe Minton, sometimes referred to as "Minton", Charge II arising from representation of Leroy, Catherine and Vivian Van Houten, sometimes referred to as "Van Houten", and Charge III arising from representation of Thurston National Insurance Company, sometimes hereinafter referred to as "Thurston".

## Roe Minton Charge.

Roe Minton, of Hazen, Arkansas, employed the appellant to represent him in a claim on a health insurance policy against the Prudence Mutual Casualty Company, hereinafter referred to as "Prudence". The appellant thereafter, as attorney for Minton, filed suit against Prudence and on January 3, 1970, secured a consent judgment in favor of Roe Minton for $5,000.00. Prudence was placed in receivership and on May 17, 1971, the appellant received a check from the receiver for $5,000.00, payable to the order of "Roe Minton and Sam A. Weems, Attorney". Appellant did not promptly notify Roe Minton of the receipt of these funds, and on the same day caused an endorsement of Roe Minton's name to be placed on the draft and deposited it in the appellant's checking account at the Citizens Bank of Carlisle,

Carlisle, Arkansas, hereinafter referred to as "Carlisle Bank". Roe Minton did not authorize the endorsement of the draft. (Appellant contends otherwise as will be hereinafter discussed.) The checking account in the Carlisle Bank was not identified as a trust account and was the depository of other funds belonging to the appellant and checks were drawn by appellant on said account for the payment of monies owed by the appellant to other clients, personal expenses, and business expenses. Thereafter, Roe Minton, in order to pay his bills, borrowed Twelve Hundred Dollars ($1,200.00). In January, 1972, the appellant, with Roe Minton and Mrs. Minton, at a cafe in De Valls Bluff in discussing Minton's insurance claim stated: "Now you understand your money is up there but we are not going to accept it until they pay you the back premiums and interest on those back premiums that they are supposed to pay." The appellant did not say that he had received the money. Two weeks later, on January 22, 1972, Roe Minton died without receiving payment from the appellant. On the Saturday following the burial of Roe Minton, Mrs. Minton called the appellant to inquire if Roe Minton's death would interfere with the collection of the money from the insurance company and the appellant stated, "No ma'am, I have already contacted them and they are ready to settle, and you should be getting a check in a few days". When the check did not arrive from the appellant, Dwight Minton, son of Roe Minton, went to the office of Mr. Max Sears, the receiver for Prudence, at which time he was shown the original check for $5,000.00 made by the receiver payable to Roe Minton and Sam A. Weems, attorney, which had been deposited in Sam Weems' account in the Carlisle Bank on May 17, 1971. Thereafter, on February 24, 1972, the appellant caused to be delivered to Mrs. Minton a check payable to her in the amount of $3,333.34, drawn on the trust account of Sam A. Weems, attorney, with the notation thereon "insurance settlement less legal fees". From the date of the receipt of the $5,000.00 from the receiver of Prudence on May 17, 1971, until delivery of the check for $3,-333.34 to Mrs. Minton on February 24, 1972, there were occasions when the funds on deposit in the Carlisle Bank and all other accounts of appellant in other banks, including a trust account in the Farmers and Merchants Bank, did not have sufficient funds therein to pay the $3,333.34 owed to

Roe Minton or his estate.

The appellant did not have the authority to use Roe Minton's money, and the appellant borrowed money in order that the check sent to Mrs. Roe Minton could be honored. The appellant had a trust account in the Farmers and Merchants Bank in Des Arc, Arkansas, from the time the receiver's check was deposited in Sam Weems' personal account until February 24, 1972, and the appellant knew the purpose of a trust account.

The Van Houten and
Thurston Charges.

Catherine Van Houten and Vivian Van Houten, wife and daughter respectively of Leroy Van Houten, were injured while driving in a motor vehicle belonging to Leroy Van Houten as a result of a collision with Loretta Thompson. Leroy Van Houten employed the appellant as an attorney to represent Van Houten and his wife and daughter in their claim against Loretta Thompson. Leroy Van Houten's automobile was insured by Thurston National Insurance Company, and it employed the appellant to represent it in a subrogation claim for damage to the motor vehicle against Loretta Thompson, who was insured by Allstate Insurance Company, hereinafter referred to as "Allstate". On July 14, 1970, appellant filed suit in Prairie Circuit Court as attorney for the Van Houtens for their claims, and as attorney for Leroy Van Houten on the subrogation claim of Thurston. Subsequent to the filing of the suit, the appellant and the adjusters for Allstate negotiated for a settlement of the claims of all Van Houtens, including the subrogation claim of Thurston. On September 30, 1971, Allstate wrote three drafts and thereafter delivered the same to the appellant. One draft in the amount of $5,300.00 was payable to "Leroy and Catherine Van Houten, individually and as husband and wife, Route 1, Stuttgart, Arkansas; and their attorney, Sam Weems, Des Arc, Arkansas". One draft in the amount of $2,-500.00, was payable to "Vivian Van Houten, Route 1, Stuttgart, Arkansas; and her attorney, Sam Weems, Des Arc, Arkansas". One draft in the amount of $1,205.93, was payable to "Thurston National Insurance Company, 3102

West Markham Street, Little Rock, Arkansas; and their attorney, Sam Weems, Des Arc, Arkansas". Each draft reflected thereon that it was in full settlement of any and all claims . . . arising out of the accident on June 17, 1970, in Little Rock, Arkansas. The appellant endorsed his own name on each of said drafts and thereafter, without notice and without authority, endorsed the names of Vivian Van Houten, Thurston National Insurance Company, and Leroy Van Houten and Catherine Van Houten on their respective drafts. The endorsements of the clients' names were written so as to appear to not have been made by the appellant in order that the bank would not question the endorsements. The appellant deposited all three drafts in his account in the Carlisle Bank. None of the clients authorized the endorsement of the drafts. The checking account in the Carlisle Bank was the same account used for the deposit of the Roe Minton draft.

At the time appellant deposited the three drafts into his account at the Carlisle Bank and commenced using the funds as his own, neither the Van Houtens nor Thurston had been advised by appellant of the proposed aggregate settlement, the total amount of the settlement, nor the participation of each client in the settlement. On October 28, 1971, Allstate by letter to Vivian Van Houten requested that she confirm the issuance of the draft of September 30, 1971, to her and Sam Weems in the amount of $2,500.00. Leroy Van Houten on behalf of Vivian Van Houten replied that she had no knowledge of the draft and requested advice as to "why this claim has not been settled and if any offer of settlement has been made by you in regard to the damage to my father's car and in regard to the injury to my mother". Thereafter, Leroy Van Houten was requested by the appellant to execute a release for all the Van Houten claims for the sum of $6,-000.00, which amount the appellant offered to pay by personal check. Mr. Van Houten refused the offer and thereafter the appellant asked the Van Houtens to execute a release for $7,800.00. Leroy Van Houten became suspicious as to how much money Allstate was willing to pay for the claims. Leroy Van Houten met with Sam Weems and John Butram, adjustor for Allstate, on December 29, 1971, at which time Mr. Butram explained what he was willing to pay on behalf of

Allstate for the settlement of all of the Van Houten claims and the Thurston claim. Mr. Van Houten did not agree to settle and thereafter on December 30, 1971, met with Mr. Butram in his office in Little Rock and for the first time saw copies of the drafts Allstate had issued on September 30, 1971, which had been endorsed and deposited by the appellant in his account. Mr. Van Houten secured the withdrawal of the appellant as his attorney and thereafter settled his claim against Allstate for the amount of $7,800.00 which Allstate paid the Van Houtens. The appellant repaid Allstate $7,500.00 on December 22, 1971, and the remaining $300.00 shortly thereafter.

No representative of Thurston ever saw the original draft from Allstate payable to it, and no representative of Thurston authorized the endorsement of the draft by appellant. Thurston had no knowledge that the claim had been settled until December 14, 1971, when they were so advised by Mr. Butram of Allstate. It was not until January 24, 1972, that Sam A. Weems paid Thurston the sum of $803.96 by check drawn on his account at the Carlisle Bank, which amount represented the balance due Thurston on its total claim after subtracting therefrom one-third (1/3) as attorney's fees. Thurston never complained to the Committee on Professional Conduct.

The trial court concluded that Mr. Weems had violated Arkansas Statute §25-401, (Repl. 1962), Canon 1, Canon 9, Disciplinary Rules 1-102(A) (4), (6); 9-102(A) (2); and 9-102(B) (1), (3), (4), on each of the three (3) Charges, and also Canon 5 and Disciplinary Rule 5-106 on Charges II and III. From our examination of the entire record in this case, we are unable to say that the findings of the trial court, and its judgment entered thereon, were against the weight of the evidence, except for violation of Canon 1 in Charge I. Violation of Canon 1 was not alleged in Charge I.

The appellant contends that the scope of appellate review should be wider than heretofore existing on appeal from the decisions of the circuit and chancery court, and cites Rule V of the Rule of the Supreme Court, Regulating Professional Conduct of Attorneys at Law as follows: ". . .

On appeal, the matter shall be heard de novo upon the record made before the trial judge, and this court shall pronounce judgment as in its opinion, should have been pronounced below." Appellant contends that this means the appellate court is in no way committed to findings of the court below even if supported by the evidence, and should make independent findings of fact, drawing its own conclusions from the evidence, except where there is a conflict in direct facts and only the demeanor and credibility of the witness is the remaining gauge upon which a decision could result.

In *Hurst* vs. *Bar Rules Committee of the State of Arkansas*, 202 Ark. 1101, 155 SW 2d 697 (1941), the court held that proceedings for disbarment of an attorney are not criminal but civil in their nature, and as such are governed by the rules applicable to all civil actions, and hence it is required that the material allegation in such cases be established only by prepondernace of the evidence and not beyond a reasonable doubt. Further, the court said: "it seems to us that, in view of the present rules of procedures relating to disbarment, this court on appeal should give even greater weight to the findings of the lower tribunal . . .". We reaffirm the teachings in the Hurst case, supra.

This Court's proper task is to inquire whether the determination of the trial court was contrary to the weight of the evidence, and must affirm the judgment of the trial court if it is not against the preponderance of the evidence.

The appellant contends that he promptly notified Roe Minton of receipt of the $5,000.00 check from the receiver of Prudence, and that he had oral authority from Minton to endorse his name on the check and deposit the same and to hold the money until a complete collection could be had. A close reading of the transcript does not support the contention of the appellant. Appellant testified, "My arrangement with Mr. Minton was that when a check would come in that he would sign it and I would sign it and we would have to let it clear before we distributed any funds. We notified Mr. Minton of this one and he called me right after, as I recall . . . ". Further, in appellant's testimony, he testified as follows, "As soon as he received this particular letter, (defendant's exhibit

10), he called me . . . ".

The appellant received the $5,000.00 check on May 17, 1971, as reflected in a letter from the appellant of that date to the receiver which states, "I am in receipt this date of your check in the amount of $5,000.00 re: Mr. Minton's claim." The check for $5,000.00 reflects the endorsement of the Citizens Bank on May 17, 1971, and was therefore deposited on or before that date. The appellant testified that he gave written notification, defendant's exhibit 10, to Roe Minton and that thereafter Minton called and gave authority to appellant to endorse and deposit the check. Had the appellant written and mailed the letter to Minton as he claimed, notifying him of receipt of the check on May 17, 1971, the same day he deposited the check in the Carlisle Bank, any call made by Roe Minton authorizing such deposit could only have been made after the written notification had been received by Minton by mail.

Also, defendant's exhibit 10, which the defendant introduced in trial, was dated May 19, 1971, which the appellant stated was not the true date of the letter. The testimony also reveals that his usual practice with regard to copies was to make a tissue copy or to make a photocopy of the original letter. The proffered exhibit was neither a tissue copy of the original letter nor a photocopy of the original letter. It was a photocopy of a tissue copy. The learned trial judge gave no credence to defendant's purported notice, finding that it was no doubt a fabrication and having been made as an afterthought in an attempt to implement a cover-up. Considering all the evidence with regard to this exhibit, we conclude that the circuit judge was not in error in finding that no notice of the receipt of the funds was given Roe Minton and that the appellant was unauthorized to endorse and deposit the check in his account.

With regard to notice of receipt of the funds and authority to endorse the check payable to the Van Houtens, the Van Houtens testified that they had no notice of receipt of the funds and that they did not authorize the endorsement of the check by the appellant. Although the appellant testified that he did give notice and was authorized by Leroy Van Houten

to endorse the checks, all the circumstances of the case, including the fact that Leroy Van Houten wrote Allstate inquiring about his settlement and that of his wife and daughter, lead us to conclude the circuit judge was not in error in finding no notice to and no authority from the Van Houtens.

Appellant testified that, with regard to Thurston, he had authority by reason of prior dealing with Thurston wherein he represented them and they had authorized him to endorse checks payable to them. Appellant did not produce other evidence of prior representation of Thurston. The representatives of Thurston testified that the appellant had never represented Thurston prior to this matter, and that no one in authority had authorized the endorsement by appellant and deposit of the check in the appellant's account. They stated further that the first knowledge they had of the receipt of the check was when they were notified of it by Allstate. We conclude that the circuit judge was not in error in finding that there was no notice to nor authority from Thurston.

The appellant contends that the committee must elect to either proceed according to Ark. Stats. Ann. § 25-411 and § 25-413 (Repl. 1962) or by the Rules Regulating Professional Conduct of Attorneys, and must state such election formally.

Rule X of the Rules Regulating Professional Conduct of Attorneys is as follows:

> "RULES AND SUPPLEMENT TO STATUTES. The rules adopted shall not be deemed exclusive of, but as supplemental to, the statutes of the State of Arkansas. The committee may invoke the statutes or proceed hereunder if it should elect to do so."

Appellant has cited no authority to support his position that election must be stated. It is apparent in the case at bar, that the Committee chose to proceed as provided by the Rules, and a formal statement of election is unnecessary.

The power to regulate and define the practice of law is a prerogative of the Judicial Department as one of the divisions

of government. *Arkansas Bar* vs. *Union National*, 224 Ark. 48, 273 SW 2d 408 (1954). Amendment 28 to the Constitution of the State of Arkansas reads,

> "The Supreme Court shall make rules regulating the practice of law and the professional conduct of attorneys at law."

The Court has adopted substantive rules relating to professional conduct and procedural rules relating to the enforcement thereof. The acts of the Legislature with regard to regulating and defining the practice of law are to be considered to be in aid of the judicial prerogative and not in derogation thereof. *Arkanaas Bar* vs. *Union National,* supra.

Appellant next contends that "essential facts" to the jurisdiction must appear in the record, and that the Rules require that the complaint "shall set forth the specific facts constituting the alleged misconduct", citing *Monks* vs. *Duffle,* 163 Ark. 118, 259 SW 735, (1924). The complaint alleges that the Supreme Court Committee on Professional Conduct, as authorized by this Court, is charging in the Circuit Court of Arkansas County, the appellant, a licensed attorney engaged in the practice of law in Prairie County and Arkansas County, with gross professional misconduct. It further states that the complaint was filed after a hearing of which the appellant received notice, and at which appellant appeared, and the matters pertaining to the charges were fully presented and the committee found violation of statutes, Canons, and Disciplinary Rules. The complaint further charges that the appellant was guilty of gross professional misconduct in representing a stated client against a stated third party concerning a stated claim, for a stated period of time at a stated place, and that with regard to said representation his conduct violated certain statutes, Canons, and Disciplinary Rules proscribed by the Supreme Court. The "essential facts" required by *Monks* vs. *Duffle,* supra, appear in the record.

Does the complaint "set forth the specific facts constituting the alleged misconduct" required by Rule IV of the Rules Regulating Professional Conduct of Attorneys? The final paragraph of each of the three charges in the complaint

alleges violation of a particular statute, Cannons, and Disciplinary Rules. The final paragraph of each of the three charges clearly relates to the acts of appellant in his representation of the stated client in a particular matter. Each charge informs the appellant of "specific facts" with sufficient clarity in order to permit him to prepare his defense, and, once the charge is determined, to constitute res judicata of the matter under consideration Rule IV of the Rules Regulating Professional Conduct of Attorneys is satisfied.

The appellant contends that Rule IV requires that the basis of the original complaint of professional misconduct, i.e. affidavit of complaint or statement that a member of the committee had information, is required. We do not agree. As pointed out in *Armitage* vs. *Bar Rules*, 223 Ark. 465, 266 SW 2d 818 (1954), the purpose of the procedure before the committee is to sift substantial charges from those without serious implication, and where serious, to allow the attorney a hearing, and if found in violation to bring formal charges by complaint. The rules have as their purpose the creation of a Committee to maintain the highest standards of ethical conduct in the practice of law. This purpose can best be served if there is free and easy access of information regarding the activities of members of the Bar. It is for this reason that the rules permit investigation on information from any source. Investigation by the Committee may be commenced without an affidavit being signed by the client. The nature or the form of the information which causes the committee to commence the investigation is not jurisdictional and a statement of the source is not required.

The appellant contends that with respect to alleged violations of Disciplinary Rules 1-102a(4)4 and (6)6, the evidence which would show that appellant "engaged in conduct involving dishonesty, fraud, deceit or misrepresenation, or engaged in any other adverse conduct" is not of sufficient degree or certainty or character to constitute the required culpability. We do not agree. In all three charges, there was active concealment of the receipt of funds. The endorsement of the drafts was deceitful and the use of the money for his own purposes dishonest. Advising Roe Minton that he was not going to accept the money at a time when he had already

deposited the same in his bank account and seeking to obtain a release for $6,000.00 from the Van Houtens at a time when $7,800.00 had already been received by him and placed in his bank account was dishonest, deceitful, fraudulent, and a misrepresentation of the true facts. The intention to permanently deprive the clients of the appropriated funds is not necessary, and the action of the appellant in dealing with his clients was a continuing one of fraud, deceit, misrepresentation, and dishonesty. The appellant had the benefit of the use of the clients' money and deprived them of its use to their damage.

The trial judge entered a permanent disbarment order. Although the charges proved against the appellant are serious and demonstrate an unfitness to practice law, we feel that in view of all the circumstances of the case the judgment should be modified.

We conclude that Sam A. Weems should be disbarred as an attorney at law for a period of three years for a period from November 14, 1973, the date the judgment of the Trial Court was entered, and that his license and right to practice law in the State of Arkanaas should be revoked. Further, should Sam A. Weems, at the end of the period of disbarment, make application for readmittance to the practice of law, the State Board of Law Examiners shall at that time determine his fitness to practice law.

It is so ordered.

WILLIAM K. BALL, Special Justice, concurs. BYRD and HOLT, JJ., disqualified.

Supplemental Opinion on Denial of Rehearing
delivered June 16, 1975

523 S.W. 2d 900

WILLIAM K. BALL, Special Justice. Each of the parties has petitioned for rehearing, and after carefully considering these petitions we have reached the conclusion that both should be denied.

The appellant's petition for rehearing, which is primarily a reiteration of some arguments he made previously, does not move us to further words.

In its petition for rehearing the appellee forcefully urges that nothing short of permanent disbarment will square with the Opinion of this Court handed down February 24, 1975. Agreeing that the appellee's position in this respect is well taken, we feel compelled to supplement our earlier opinion to explain why we reached the decision to disbar the appellant for three years instead of permanently.

Considering the record before us — and it is a good one — we unhesitatingly find that the appellant has been guilty of professional misconduct of a serious nature and adversely reflecting upon his fitness to practice law. Therefore, it is the duty of this Court, as the enforcing agency charged with the responsibility of maintaining the highest standards of professional and ethical conduct by lawyers licensed to practice law in the State of Arkansas, to take appropriate disciplinary measures.

It has been proved to our satisfaction that the appellee, in addition to being guilty of conduct prohibited by Ark. Stat. Ann. § 25-401 (Repl. 1962), violated certain of the Disciplinary Rules set forth in the Code of Professional Responsibility prepared by a special committee of the American Bar Association and recently adopted by this Court. In the "Preliminary Statement" prefacing this code it is said, "The severity of judgment against one found guilty of violating a Disciplinary Rule should be determined by the character of the offense and the attendant circumstances."

Certain attendant circumstances not mentioned in our earlier opinion but having relevance tending to mitigate the severity of judgment against this lawyer are (1) the lack of evidence of past professional or personal misconduct on his part, (2) the fact that his professional misconduct which brought on these charges fell short of being criminal in nature, (3) the fact that his clients received all moneys to which they were entitled, and (4) the generally cooperative actions of this lawyer during the course of the investigation by the appellant.

In our earlier opinion it was stated that "* * * the actions of the appellant in dealing with his clients was a continuing one of fraud, deceit, misrepresentation, and dishonesty." Actually, we are convinced that the appellant's professional conduct in issue, though inexcusable, resulted in the main from inattention, disregard and neglect, and not from a conscious desire or plan to permanently deprive his clients of their money. Thus, even though this conduct adversely reflects on his fitness to practice law and was im-

proper in several respects, nonetheless it should not have been characterized as "a continuing one of fraud, deceit, misrepresentation, and dishonesty."

The decision should not be interpreted to indicate that this Court has taken or will hereafter take a "soft" position or a "hard" stance or some middle ground in disciplining wayward members of the bar of the Court. It does evidence this Court's dedication to requiring that the attorneys on its rolls fulfill their professional responsibilities and maintain the highest standards of ethical conduct. Each disciplinary proceeding stands separate and apart from any other; and what we are saying here in the case of Sam A. Weems is that, while the charges of professional misconduct against him have been satisfactorily proved, and while a persuasive case for permanent disbarment has been presented, considering the character of the offenses and the attendant circumstances justice will be best served by disbarment for a period of three years as ordered in our earlier opinion, with his readmittance to the practice of law being subject to the conditions specified in that opinion.

Petitions denied.

CHARLES M. CONWAY, Special Justice, concurs.

BYRD and HOLT, JJ., not participating.

CHARLES M. CONWAY, Special Justice, concurring. I concur that the petitions for rehearing should be denied.

I would not modify the findings of the Trial Court by characterizing the acts of the attorney as resulting from inattention, disregard and neglect.

The judgment of disbarment was for a period of three (3) years with readmittance being conditioned upon the attorney's application for readmittance and a determination at that time of his fitness to practice law. Such judgment requires that should the attorney again desire to practice law

that he maintain a competence in the law during his disbarment period to be tested as required of all other applicants. In addition the applicant would have the burden of proving to the satisfaction of the Committee on Admissions that it was reasonable to expect that he would comply with the Conduct of Professional Responsibility adopted by this Court. The conditions of readmission are such as to assure that those who are admitted to practice law are worthy of the privilege.