James NEAL, as Executive Director of the Supreme Court Committee on Professional Conduct *v.* Jimmie L. WILSON

93-691                                                              873 S.W.2d 552

Supreme Court of Arkansas
Opinion delivered April 18, 1994
[Rehearing denied May 23, 1994.*]

*Newbern, J., not participating.

*Daggett, Van Dover & Donovan*, by: *Robert J. Donovan*, for appellant.

*Friday, Eldredge & Clark*, by: *Jerry L. Malone*, for appellee.

JACK HOLT, JR., Chief Justice. The appellant, James A. Neal, in his capacity as Executive Director of the Arkansas Supreme Court Committee on Professional Conduct, brings an appeal from the circuit court's order granting appellee Jimmie L. Wilson's motion to dismiss disbarment proceedings on the basis of the running of the statute of limitations. Mr. Neal has raised five points for reversal, arguing that (1) the trial court erred in finding that the disbarment proceeding was barred by the statute of limitations because no statute of limitations is applicable to disbarment proceedings; (2) alternatively, the trial court erred in finding that the disbarment proceeding was barred by the statute of limitations because any applicable statute of limitations had not run; (3) the trial court erred in finding that Mr. Wilson may have altered his position by agreeing to plead guilty to misdemeanor charges on the assumption that the Committee would take no further action; (4) the trial court erred in finding that rules of professional conduct were being applied that did not exist at the time the misconduct occurred; and (5) this court should hear the case *de novo* and pronounce such judgment as we may determine should have been pronounced below.

We agree with Executive Director Neal's contention that the trial court erred in finding that the effective rules were those in force at the time of Mr. Wilson's misconduct in 1982 rather than at the time of his guilty plea in 1990 and that the proceeding was therefore barred by the statute of limitations. For this reason, we reverse the trial court and remand this matter for further proceedings. We do not address the remaining issues relating to the circuit court's decision because its order was predicated on the running of the statute of limitations and is consequently limited in this regard. We further decline to pronounce judgment as requested by the Executive Director in his fifth point on appeal.

*Facts*

In 1981 and 1982, appellee Jimmie L. Wilson, an attorney and farmer, borrowed approximately $775,230 from the Farmers Home Administration, a federal entity, for farm-operating expenses. The loan was secured by an FmHA lien on Mr. Wilson's crops. A federal grand jury subsequently indicted him on various criminal charges relating to the disposition of proceeds from crop sales and the transfer of funds maintained in a joint bank account estab-

lished in the names of the FmHA, Mr. Wilson, and his wife.

Following a jury trial in 1985 in the United States District Court for the Eastern District of Arkansas, Mr. Wilson was found guilty of one count of conspiracy to defraud the United States in violation of 18 U.S.C. § 371, forty counts of knowingly disposing of property mortgaged to a government agency in violation of 18 U.S.C. § 658, and seven counts of unlawfully converting to his own use money belonging to the United States in violation of 18 U.S.C. § 641. He was sentenced to imprisonment for thirty months on the first count and to lesser concurrent terms on the others. The sentence was stayed pending appeal. On May 15, 1985, District Judge G. Thomas Eisele suspended Mr. Wilson from the practice of law in federal court "until final disposition of any disciplinary proceedings commenced in connection with the conviction."

Meanwhile, on May 2, 1985, Darrell F. Brown, attorney for Mr. Wilson, sent the following request to Joe Phillips, Executive Secretary of the Supreme Court Committee on Professional Conduct:

> In order that Mr. Jimmy Wilson will be aware of the policy of the Committee resulting from our discussion, I would appreciate you forwarding to me a "To Whom It May Concern" type letter advising that at this time it is the position of the Committee not to revoke the license until the appellate process has been exhausted. . . . ·

On May 8, 1985, Mr. Phillips responded with the following statement:

> It is presently the policy of the Committee on Professional Conduct not to take any action against a licensed attorney who has been convicted of a crime until the appeal process for that attorney is completed.

Mr. Wilson appealed his conviction, which was affirmed by the Eighth Circuit Court of Appeals in *U.S.* v. *Wilson*, 806 F.2d 171 (8th Cir. 1986).

One of the issues raised in that appeal, based on *Batson* v. *Kentucky*, 476 U.S. 79 (1986), was whether Mr. Wilson, who is black, had been denied his due process and Sixth Amendment

rights due to the government's use of peremptory challenges to strike six of seven black venirepersons. While the Eighth Circuit found no basis for reversal in *Batson* at that point, the United States Supreme Court opinion in *Griffith* v. *Kentucky*, 479 U.S. 314 (1987) caused the Court of Appeals to vacate its earlier decision and to remand Mr. Wilson's case for a *Batson* hearing. *U.S.* v. *Wilson*, 815 F.2d 52 (8th Cir. 1987).

The District Court held a *Batson* hearing in July 1987 and concluded that race was not a factor in the government's exercise of its peremptory challenges. In *U.S.* v. *Wilson*, 884 F.2d 1121 (8th Cir. 1989), the Eighth Circuit, ruling that the prima facie case of discrimination had not been overcome, reversed and remanded the matter for a new trial.

Rather than being subjected to a new trial on the existing felony charges, Mr. Wilson was charged on August 20, 1990, in a five-count misdemeanor information with three counts of converting property mortgaged or pledged to a farm credit agency to his own use in violation of 18 U.S.C. § 658 and two counts of converting public money, property, or records to his own use in violation of 18 U.S.C. § 641. Mr. Wilson appeared before federal District Judge Stephen Reasoner on August 22, 1990, and pled guilty to each misdemeanor count. The plea and its acceptance were conditioned upon the dismissal of all pending felony charges of which Mr. Wilson had previously been convicted. Judgment was entered on December 26, 1990, and Mr. Wilson was sentenced to four-and-one-half months' imprisonment on the first count (§ 658). With respect to the remaining counts, he was placed on probation for a three-year period which was to run consecutively to the jail term. Immediately following entry of the 1990 state conviction, District Judge Eisele issued an order again suspending Mr. Wilson from federal practice "until the final disposition of any disciplinary proceedings commenced in connection with the conviction."

On March 29, 1991, the appellant, James A. Neal, notified Mr. Wilson of a pending complaint before the Arkansas Supreme Court Committee on Professional Conduct ("the Committee"), "predicated on your entry of a plea of guilty to certain criminal offenses on August 22, 1990, in the United States District Court for the Eastern District of Arkansas." Mr. Neal noted that "It

appears the allegations of this complaint come under Rules 8.4(b) and 8.4(c) of the [amended] Model Rules."

Mr. Wilson's attorney, Darrell F. Brown, in a letter dated April 15, 1991, sought an extension of time for filing a response from April 23, 1991, the twentieth day following notification, until August 30, 1991. Responding by a letter dated April 19, 1991, Mr. Neal granted an extension to May 20, 1991. Mr. Brown mailed another request for an extension on May 16, 1991, which was not received by the Committee until May 20, the final day of the extended period. On June 10, 1991, Mr. Neal advised Mr. Brown that "the request for an additional extension is denied." Moreover, the Executive Director declared, "the complaint is being processed to the Committee for its determination."

By a certified letter dated and mailed on July 22, 1991, Mr. Neal informed Mr. Wilson of the following:

> It is the unanimous decision of the Committee that your conduct in this matter violated the Model Rules of Professional Conduct, as amended. It is the further decision of the Committee to institute disbarment proceedings against you on the basis of that conduct.
>
> In lieu of the filing of a disbarment suit, the Committee will give you the opportunity to voluntarily surrender your Arkansas attorney's license. . . .

Mr. Brown responded on behalf of his client in a letter dated July 24, 1991, informing the Executive Director that Mr. Wilson "disagrees with the decision of the committee to institute disbarment proceeding and at this time does not wish to voluntarily surrender." In addition, the appellee's attorney advised the Committee that the matter was still on appeal in the Eighth Circuit Court of Appeals. (The record, however, does not support the attorney's contention.)

On October 9, 1991, Mr. Neal, as Executive Director of the Committee on Professional Conduct, filed a complaint for disbarment in the Phillips County Circuit Court pursuant to Section 6B(1) of the Procedures of the Arkansas Supreme Court Regulating Professional Conduct of Attorneys at Law, which were adopted on a trial basis by per curiam order on July 16, 1990. Sec-

tion 6B(1) requires the Committee to institute a disbarment action when the complaint against an attorney is based on a conviction of a felony or a criminal act that, under the terms of Rule 8.4(b) of the Model Rules of Professional Conduct, reflects adversely on the attorney's "honesty, trustworthiness or fitness as a lawyer in other respects."

Mr. Wilson filed a motion to dismiss for failure to state a cause of action. In the motion, Mr. Wilson asserted that he had not, under the terms of Section 6B(1) of the Procedures, been convicted of a felony and that, within the meaning of the language of Rule 8.4(b), he had not committed a criminal act that reflects adversely on his honesty, trustworthiness, or general fitness as a lawyer. He characterized the conduct to which he had pled guilty as nothing more — apart from the involvement of an agency of the federal government — "than a simple breach of contract."

On December 18, 1991, the Committee filed a motion for summary judgment. Mr. Wilson filed a supplement to his motion to dismiss on February 21, 1992, in which he stated:

> 6. Rule 8.4(b), the rule which Defendant is accused of violating, was adopted by per curiam order of the Arkansas Supreme Court on December 16, 1985, and became effective on January 1, 1986. These rules apparently replaced the then-existing Code of Professional Responsibility adopted by per curiam order of June 21, 1976 (*See* 260 Ark. 910), which became effective on July 1, 1976. Consequently, the Model Rule which the defendant is accused of violating was not in existence at the time of the alleged conduct which provides the basis for these disbarment proceedings. (Further, the Procedures, including Sections 5.6 and 6.B.(1), were not adopted until the Arkansas Supreme Court did so on a trial basis by per curiam order of July 16, 1990.)

In addition, Mr. Wilson asserted that disbarment proceedings are civil in nature and are subject to the rules of civil procedure, which entail application of a five-year statute of limitations to offenses which occurred nine to eleven years earlier.

A hearing was held on April 6, 1992. In a letter opinion

dated February 16, 1993, the trial court reiterated its finding at the hearing that the statute of limitations applied. The circuit judge also commented that Mr. Wilson's due process rights would be violated by adherence to rules of professional conduct not in effect at the time the misconduct occurred. He further stated:

> The Court is convinced that Mr. Wilson conducted himself in a manner, because of which the committee, had it acted in a more timely fashion, could have disciplined him under an appropriate rule. . . . [I]t appears that the State Committee ill advisedly waited for the Federal Committee to perform. However, the Federal Committee did suspend Mr. Wilson's privilege of practicing law in the Federal Courts in 1985. Yet, the State Committee still took no position.

> Whether it comes under statute of limitations, laches, waiver or some other legal theory, Mr. Wilson may well have agreed to the misdemeanor charge, after two felony conviction reversals, on the premise that the state was going to do nothing and thus altered his position for several possible reasons.

> The State Committee chose to wait too long, and the defendant's motion to dismiss is granted and the State's complaint for suspension is dismissed.

On March 3, 1993, the trial court's formal order of dismissal was filed, along with its letter opinion; based on the reasons set forth in the opinion, and primarily on the application of the statute of limitation, Mr. Wilson's motion to dismiss was granted, and the Committee's complaint was dismissed with prejudice, as well as its motion for summary judgment upon its complaint, which was denied for mootness. A notice of appeal was filed on March 15, 1993.

## Standard of review

The present appeal arises from the judgment of the circuit court dismissing the complaint for disbarment filed by Mr. Neal on behalf of the Committee. In reviewing a trial court's decision on a motion to dismiss under Ark. R. Civ. P. 12(b)(6), we treat the facts alleged in the complaint as true and view them

in the light most favorable to the party who filed the complaint. *Gordon* v. *Planters & Merchants Bancshares, Inc.*, 310 Ark. 11, 832 S.W.2d 492 (1992); *Battle* v. *Harris*, 298 Ark. 241, 766 S.W.2d 431 (1989). In deciding such motions, the trial court must look only to the allegations in the complaint. *Wiseman* v. *Batchelor*, 315 Ark. 85, 864 S.W.2d 248 (1993); *Deitsch* v. *Tillery*, 309 Ark. 401, 833 S.W.2d 760 (1992).

Here, the complaint, filed on October 9, 1991, provided pertinent information about Mr. Wilson's pleas of guilty on the misdemeanor charges as well as considerable detail about the conduct that ultimately led to those pleas. Included were the dates 1981 and 1982 for the illegal grain sales and fund transfers as well as the August 1990 plea proceedings. Accepting those dates as true, the circuit court determined that the statute of limitations was applicable and prohibited the Committee from pursuing the disbarment proceeding.

### Judicial authority to regulate practice of law

The power to regulate and define the practice of law is a prerogative of the judicial department as one of the divisions of government. *Weems* v. *Supreme Ct. Comm. on Prof. Conduct*, 257 Ark. 673, 523 S.W.2d 900 (1975), *reh'g denied*, 257 Ark. 685-A, 523 S.W.2d 900 (1975). Our responsibility is set forth explicitly in Amendment 28 of the Arkansas Constitution: "The Supreme Court shall make rules regulating the practice of law and the professional conduct of attorneys at law."

### Statute of limitations and rules of professional conduct

The issues involving the applicability of the statute of limitations and the rules of professional conduct promulgated by this court are closely intertwined. It is, however, unnecessary for us to address the questions raised concerning the applicability and running of the statute of limitations because the operative Procedures of the Arkansas Supreme Court Regulating Professional Conduct of Attorneys at Law, adopted (prior to Mr. Wilson's guilty plea) by per curiam order on July 16, 1990, focus upon the fact of conviction rather than the allegation of misconduct. The entire question of the statute of limitations is, therefore, a non-issue. The Committee's action for disbarment, filed on October 9, 1991, was by any definition timely, having fol-

lowed Mr. Wilson's plea of guilty on August 22, 1990, by approximately thirteen and one-half months.

This consideration brings us to the Executive Director's fourth point for reversal, in which he asserted that the trial court erred in finding that the rules of professional conduct that were invoked by the Committee in its disbarment action did not exist at the time of the misconduct and, as a result, that Mr. Wilson was denied due process of law.

Implicit in the trial court's letter opinion is the view that the operative rule at the time of Mr. Wilson's misconduct was Rule X of the *Rules of the Court Regulating Professional Conduct of Attorneys at Law*, 260 Ark. 910 (1976), adopted by per curiam order on June 21, 1976, and made effective July 1, 1976. That rule provided, in relevant part:

> If an attorney has been convicted of a felony or infamous crime under the laws of any State or the United States, a charge *may be made* by complaint filed with the Committee with the Clerk of a Court of proper venue under these Rules. . . . The sole issue to be determined shall be whether the crime warrants discipline and, if so, the extent thereof. . . .

(Emphasis added.) Rule X afforded the Committee greater discretion in filing a complaint than is now the case, and the conduct in question, consisting of either a "felony" or an "infamous crime," was narrower in scope than at present.

Section 6A of the current Procedures states that:

> All prosecuting attorneys and judges participating in or presiding over a hearing in which an attorney is *convicted of, pleads guilty to, or pleads nolo contendere to a crime which is a Class A misdemeanor or greater offense, shall have the duty to report such conviction or plea* to the Executive Director.

(Emphasis added.) Section 6B(1), under which the Executive Director filed his complaint on October 9, 1991, states, as quoted earlier, that:

> When a complaint against an attorney is based on a conviction of a felony or a crime which also violates Rule

8.4(b) of the Model Rules of Professional Conduct, the Committee *shall* institute an action of disbarment.

(Emphasis added.)

As Section 6 clearly indicates, it is the conviction, or, as in this instance, the guilty plea, that triggers the mandatory disbarment action against an attorney. Prior to conviction, no such action is required. As a practical matter, the present Procedures emphasize taking action upon actual conviction or pleas of guilty or *nolo contendere* more so than conducting proceedings independently prior to trial for alleged violations of the Model Rules of Professional Conduct.

In sum, the cause of action did not accrue until August 22, 1990, the date on which Mr. Wilson entered his guilty plea. As for the 1985 felony conviction, the Committee decided, as a matter of policy stated in its letter of May 8, 1985, "not to take any action . . . until the appeal process . . . is completed." Granted, the Committee had the option of proceeding at the time the misconduct occurred, but it chose not to do so. Rather, it deferred to the pending federal court matter, as it had a right to do. This deferment inured to Mr. Wilson's benefit, for he was permitted to continue his practice of law in the state courts while his case meandered in its course for some ten years of trial, appeal, and rehearings in the federal system. In any event, Mr. Wilson's 1985 federal felony conviction was overturned and is irrelevant for purposes of this appeal; we look, instead, to his 1990 conviction as the basis for the Committee's charge.

Rule 8.4(b), which defines "professional misconduct" in part as the commission of "a criminal act that reflects adversely on the lawyer's honesty, trustworthiness or fitness as a lawyer in other respects," and which comprehends the misdemeanor charges to which Mr. Wilson pled guilty, was effective as part of the Model Rules of Professional Conduct on January 1, 1986, having been adopted by per curiam order on December 16, 1985. *In the Matter of the Arkansas Bar Association: Petition for the Adoption of Model Rules of Professional Conduct*, 287 Ark. 495, 702 S.W.2d 326 (1985). The supplemental Procedures of the Arkansas Supreme Court Regulating Professional Conduct of Attorneys at Law, under which the Executive Director filed the

complaint for disbarment, were effective on July 16, 1990, the date of our per curiam. *In the Matter of Procedures of the Arkansas Supreme Court Committee Regulating Professional Conduct of Attorneys at Law*, 303 Ark. 725, 792 S.W.2d 323 (1990). Both were controlling when Mr. Wilson pled guilty on August 22, 1990.

In passing, we note that Mr. Wilson's reliance on *Sexton v. Supreme Ct. Comm. on Prof. Conduct*, 295 Ark. 141, 747 S.W.2d 94 (1988), is misplaced. In that case, attorney Sam Sexton, Jr., was charged with misconduct under the Model Rules that became effective at the beginning of 1986. We held, however, that because the acts in question occurred in 1983, it was a violation of due process to charge Mr. Sexton under a rule that was not in effect at the time of the alleged misconduct. "Due process," we said, "requires notice that an act is punishable at the time it is committed. . . . It might not matter if the rules were substantively the same, but we find a significant difference between the old rule . . . and the new rule . . . ." 295 Ark. at 144, 747 S.W.2d at 96. Still, we held it permissible for the Committee to proceed under the Code of Professional Responsibility, the now-superseded body of rules that was in effect in 1983.

Two factors distinguish the *Sexton* case from the present appeal. There, attorney Sexton was appealing a one-year suspension, while here the Executive Director of the Committee on Professional Conduct is appealing the dismissal of a complaint for disbarment. Further, since the *Sexton* decision was handed down in 1988, this court has adopted the supplementary Procedures that contain the language of Section 6B(1) making a mandatory disbarment action contingent upon "*conviction* of a felony or a crime which also violates Rule 8.4(b) of the Model Rules of Professional Conduct." (Emphasis added.) We hold that the *Sexton* case is not controlling under the circumstances.

### Wilson's reliance on Committee policy

Mr. Neal maintains, in his third point for reversal, that the trial court also erred in commenting that Mr. Wilson may have altered his position by agreeing to misdemeanor charges in the belief that the Committee would take no action. As noted earlier, we do not reach this issue because the trial court's order focused

on the running of the supposedly applicable statute of limitations, and our inquiry is consequently limited in scope to that question. Any speculation by the trial court regarding Mr. Wilson's motivation in entering a guilty plea amounted to unverifiable dicta.

### Requested pronouncement of judgment

Relying on Section 5H(3) of the Procedures of the Arkansas Supreme Court Regulating Professional Conduct of Attorneys at Law, Mr. Neal requests that this Court, in its *de novo* review, "pronounce such judgment as in its opinion should have been pronounced below." He has, however, overlooked a crucial phrase in the section:

> *Appeals from any action by the Committee after hearing shall be heard de novo on the record* and the Arkansas Supreme Court shall pronounce such judgment as in its opinion should have been pronounced below[.]

This appeal arises from a decision of a circuit court and is not governed by Section 5H(3).

The applicable provision, Section 5H(4) follows:

> Appeals from any judgment of a Circuit Court in a disbarment proceeding shall be heard in accordance with the rules governing appeals of civil cases.

Although disbarment proceedings are heard *de novo* on appeal, *Weems v. Supreme Court Committee on Professional Conduct, supra,* it would be inappropriate for this Court to render judgment in this case because the appeal is from a motion to dismiss. The matter must be remanded to the circuit court.

Long ago, United States Supreme Court Chief Justice John Marshall, in a disbarment case involving former Vice-President Aaron Burr, observed:

> On one hand, the profession of an attorney is of great importance to an individual, and the prosperity of his whole life may depend on its exercise. The right to exercise it ought not to be lightly or capriciously taken from him. On the other, it is extremely desirable that the respectability of the bar should be maintained, and that its harmony with the

bench should be preserved. For these objects, some controlling power, some discretion, ought to reside in the Court. This discretion ought to be exercised with great moderation and judgment; but it must be exercised; and no other tribunal can decide, in a case of removal from the bar, with the same means of information as the Court itself. If there be a revising tribunal, which possesses controlling authority, that tribunal will always feel the delicacy of interposing its authority, and would do so only in a plain case.

*Ex parte Burr*, 22 U.S. (9 Wheat.) 529, 530 (1824). *See also Hurst* v. *Bar Rules Committee of the State of Arkansas*, 202 Ark. 1101, 155 S.W.2d 697 (1941); *Maloney* v. *State*, 182 Ark. 510, 32 S.W.2d 423 (1930); *Beene* v. *State*, 22 Ark. 149 (1860). This, as any other disbarment proceeding, is a difficult case for consideration. Yet because the matter was dismissed by the circuit court, we have no basis for "interposing [our] authority" at this point.

The judgment is reversed and the cause remanded for further proceedings consistent with this opinion.

NEWBERN, J., not participating.