The Honorable Marc McCune Prosecuting Attorney Twenty-First Judicial District 206 South 3rd Street Van Buren, AR 72956
Dear Mr. McCune:
I am writing in response to your request for my opinion on three questions relating to the dual service since January 1, 2007 of an attorney as a Crawford County Justice of the Peace and as Van Buren City Attorney. You report that the individual was elected to both positions in November 2006. You further report that this individual has been receiving compensation from both the county and the city since the commencement of his services. Against this backdrop, you have asked me to address the following:
Is A.C.A. 21-5-107 permissible to the extent it would deprive an individual of income earned in commission of one or more elected positions?
Would enforcement of A.C.A. 21-5-107 violate the Fair Labor Standards Act, 29 U.S.C. Sec. 201, et seq. and/or the Minimum Wage Act of the State of Arkansas, A.C.A. 11-4-201 et seq.?
Would application of A.C.A. 21-5-107 to a licensed attorney, holding more than one elective position as city attorney for a first-or second-class city, be an impermissible regulation of the practice of law impinging on the Supreme Court's power to regulate the practice of law pursuant to Ark. Const. amend. 28?
RESPONSE
In my opinion, the answer to your first question is "yes." The statute does not contravene any state or federal directive regarding the compensation of licensed attorneys. Specifically, I believe the statute would not run afoul either of the equal protection guarantees set forth in U.S. Const. amend. 14 and Ark. Const. art. 2, §§ 2 and 18 or of the provisions of Ark. Const. amend. 28, which locates primary, but not exclusive, regulatory control over the practice of law in the Arkansas Supreme Court. In my opinion, the answer to your second question is "no." An elected officer is exempted from the minimum-wage provisions of the Fair Labor Standards Act and, in all likelihood, from the provisions of the Arkansas Minimum Wage Act. With respect to the latter, even if an elected official might fall within the general coverage provisions of the Arkansas Minimum Wage Act, I believe A.C.A. § 21-5-107 would nevertheless exempt the official because it more specifically addresses the situation of dual elective-office holding. Finally, I believe the answer to your third question is "no." Although Amendment 28 locates in the supreme court the ultimate authority to regulate the practice of law, the amendment has not been interpreted to foreclose legislative regulation that does not contravene supreme court regulations. No such contravention arises from the application of A.C.A. § 21-5-107.
Question 1: Is A.C.A. 21-5-107 permissible to the extent it would deprive an individual of income earned in commission of one or more elected positions?
Section 21-5-107 of the Arkansas Code (Repl. 2004) provides:
(a)(1) A person holding more than one (1) elective office shall be entitled to receive compensation from only one (1) of the offices held.
(2) The person shall select the office from which he or she may receive compensation by filing a statement with the Secretary of State and the disbursing officer of each governmental entity in which he or she holds an elective office.
(b) For the purpose of this section:
(1) "Compensation" means all salaries, retirement allowances, group insurance, medical benefits, and anything else of value that a governmental entity provides in return for the services of its officers; and
(2) "Elective office" means any office created by or under authority of the laws of the State of Arkansas, or of a subdivision thereof, that is filled by the voters, except a federal office.
You report having tentatively concluded that this statute "is lawful in that all statutes are presumed to be lawful and constitutional." In assessing the constitutionality of A.C.A. § 15-41-113, I am guided by the following:
Statutes are presumed constitutional, and the burden of proving otherwise is on the challenger of the statute. Ford v. Keith, 338 Ark. 487,996 S.W.2d 20 (1999); ACW, Inc. v. Weiss, 329 Ark. 302, 947 S.W.2d 770
(1997). If it is possible to construe a statute as constitutional, we must do so. Jones v. State, 333 Ark. 208, 969 S.W.2d 618 (1998). In construing a statute, we will presume that the General Assembly, in enacting it, possessed the full knowledge of the constitutional scope of its powers, full knowledge of prior legislation on the same subject, and full knowledge of judicial decisions under preexisting law. McLeod v. Santa Fe Trail Transp. Co., 205 Ark. 225, 168 S.W.2d 413 (1943). We must also give effect to the legislature's intent, making use of common sense and giving words their usual and ordinary meaning. Kyle v. State,312 Ark. 274, 849 S.W.2d 935 (1993).
Bunch v. State, 344 Ark. 730, 736, 43 S.W.3d 132 (2001). Moreover, the legislature has the absolute power to legislate, unless prohibited from doing so by the constitution, either expressly or by necessary implication. Black v. Cockrill, 239 Ark. 367, 369, 389 S.W.2d 881
(1965). However, notwithstanding the foregoing, it is well established that constitutional provisions, including amendments, take precedence over any law passed by the legislature. Gravett v. Villines, 314 Ark. 320,326, 862 S.W.2d 260 (1993).
Applying this standard to the provisions of A.C.A. § 21-5-107, I agree that no constitutional provision would preclude the legislature from mandating that an individual properly elected to two offices collect compensation for only one of the two. For reasons discussed in my response to your third question, I do not believe this statute would run afoul of Ark. Const. amend. 28, which locates primary control over the practice of law in the United States Supreme Court. Any other challenge to this provision on constitutional grounds would in all likelihood be based upon the equal protection provisions of the federal and state constitutions. U.S. Const. amend. 14; Ark. Const. art. 2, §§ 3. As my immediate predecessor noted in Ark. Op. Att'y Gen. No. 2006-004:
"Discrimination," in the legal context, arises out of the constitutional principle of "equal protection," which is set forth in the 14th Amendment to the United States Constitution, and in Article 2, §§ 2 and 3 of the Arkansas Constitution. The equal protection doctrines of both the Arkansas and the U.S. Constitutions prohibit certain types of "classifications." A classification is the disparate treatment of those who are similarly situated. However, classifications in and of themselves do not violate the equal protection doctrines. In order to establish an equal protection violation arising out of a classification that does not affect a suspect class (such as a particular racial group, see, e.g., Loving v. Virginia, 388 U.S. 1 (1967)) or a fundamental right (such as the right to vote, see Dunn v. Blumstein, 405 U.S. 330 (1972)), it is necessary to show that the disparity is arbitrary. That is, the disparity must be shown to have no rational basis — no rational relation to a legitimate end. Fitzgerald v. Racing Assn. of Central Iowa, 02-695, (U.S. 2003); Vacco v. Quill, 521 U.S. 793 (1997); Romer v. Evans,517 U.S. 620, 631 (1996); Clements v. Fashing, 457 U.S. 957 (1982); Seagrave v. Price, 349 Ark. 433, 79 S.W.3d 339 (2002); Craft v. City of Fort Smith, 335 Ark. 417, 984 S.W.2d 22 (1998). Economic classifications are usually subjected to the rational basis standard of scrutiny. Cleburne v. Cleburne Living Center, Inc., 473 U.S. 432 (1985).
Citing Ark. Op. Att'y Gen. No. 2004-066. As my predecessor further noted in Ark. Op. Att'y Gen. No. 2006-027:
In reviewing the constitutionality of a classification that does not affect a suspect class or a fundamental right, the courts must not only presume the constitutionality of the challenged classification; they must also uphold the classification even without requiring a showing of an actual rational basis, so long as any conceivable rational basis for the scheme can be adduced — even a hypothetical one. Ester v. National Home Ctrs., Inc., 335 Ark. 356, 981 S.W.2d 91(1998); Reed v. Glover,319 Ark. 16, 889 S.W.2d 729 (1994); Arkansas Hospital Assoc. v. State Board of Pharmacy, 297 Ark. 454, 763 S.W.2d 73 (1989).
In my opinion, A.C.A. § 21-5-107 sets up a classification that might distinguish between a city attorney who holds another elective position and a city attorney who does not. I believe this classification would readily withstand an equal protection challenge under the standard set forth above. In declaring that a person holding more than one elective office may receive compensation based solely upon the holding of one of the offices, the legislature may simply have intended to avoid too great a diversion of scarce governmental resources to a single individual. It may further have intended to avoid any duplication of such compensation as group insurance coverage and medical benefits. Finally, it may have intended to discourage individuals from seeking multiple public offices purely for pecuniary gain.
Having found no constitutional objection to the provisions of A.C.A. § 21-5-107, I will further note that I do not consider the statute potentially offensive as contravening some other possibly applicable legislation. For reasons discussed below, I do not believe A.C.A. §21-5-107 conflicts with the statutes mentioned in your second question. See discussion, infra.
Question 2: Would enforcement of A.C.A. 21-5-107 violate the Fair Labor Standards Act, 29 U.S.C. Sec. 201, et seq. and/or the Minimum Wage Act of the State of Arkansas, A.C.A. 11-4-201 et seq.?
With respect to the Fair Labor Standards Act (the "FLSA"), 29 U.S. § 201 et seq., the answer to this question would appear to be "no." You categorically note in your request that 29 U.S.C. § 203(E)(2)(c) [sic] excludes elected officials from the wage restrictions set forth in the FLSA. I agree, although this conclusion is not quite apparent on the face of the statute.
Subsection 29 U.S.C. 203(e) provides in pertinent part:
(1) Except as provided in paragraphs (2), (3), and (4) the term "employee" means any individual employed by an employer.[1]
(2) In the case of an individual employed by a public agency, such term means —
* * *
(C) any individual employed by a . . . political subdivision of a State . . . other than such an individual —
(i) who is not subject to the civil service laws of the . . . political subdivision . . . which employs him; and
(ii) who —
(I) holds a public elective office of that . . . political subdivision . . . [.]
The upshot of this statute is that an elected officer of a political subdivision will be an "employee" subject to the minimum-wage provisions of the FLSA if he is covered by the civil service laws applicable to the political subdivision.
As noted in the above factual recitation, the political subdivisions at issue in this instance are Crawford County and the City of Van Buren, which is a city of the first class with a population below 20,000 people. The Arkansas Code authorizes the establishment of municipal civil service systems only for cities with populations of 75,000 or above, A.C.A. § 14-49-101 et seq. (Repl. 1998), or for cities with populations of 20,000 up to 75,000, A.C.A. § 14-50-101 et seq. (Repl. 1998).[2] The Code contains no provisions for civil service systems at the county-wide level. In accordance with these statutory restrictions, neither Crawford County nor the City of Van Buren has a civil service system. Consequently, under the definition set forth at 29 U.S.C. 203(e), the individual at issue in your request would not constitute an "employee" of either political subdivision subject to the minimum-wage provisions of the FLSA.
You further suggest in your request that the restrictions on compensation set forth in A.C.A. § 21-5-107 are in no sense inconsistent with the Arkansas Minimum Wage Act (the "Act"), A.C.A. § 11-4-201 et seq. (Repl. 2002 Supp. 2005). With respect to the range of "employees" covered by the Act, A.C.A. § 11-4-203 provides in pertinent part:
(3) "Employee" includes any individual employed by an employer but shall not include:
* * *
(C) Any individual employed by the United States or by the state or any political subdivision thereof, except public schools and school districts[.]
In my opinion, this exception to the definition of "employees" reflects a legislative intention to exempt individuals rendering services to the public who are compensated with public funds. Although neither the Act nor any case law addresses directly whether elected officials qualify as "employees" under this definition, given the fact that local elected officials are paid by the local political subdivision, I believe logic dictates that the term "employee" would apply within the context of compensation issues. See, Haynes v. Riales, 226 Ark. 370, 374, 290 S.W.2d 7
(1956) (citing United States v. Harwell, 6 Wall. 385, for the proposition that "`[a]n office is a public station or employment'"); Ark. Op. Att'y Gen. No. 92-198 (opining that "all offices may be considered employment"); compare Ark. Op. Att'y Gen. No. 99-280 (opining that an elected official qualifies as an "employee" for purposes of determining APERS eligibility).
Furthermore, I believe the specificity of A.C.A. § 21-5-107 in addressing the compensation of an individual serving in two elective offices compels the conclusion that an individual in such a situation is not subject to the Act. It is a universally accepted principle of statutory construction that a general statute will not apply where there is a specific statute governing a particular subject matter. Donoho v. Donoho, 318 Ark. 637,887 S.W.2d 290 (1994). In my opinion, this principle would dictate that the provisions of A.C.A. § 21-5-107 be given effect even if an individual holding a single elective office might be deemed subject to the minimum wage provisions of the Act.
Question 3: Would application of A.C.A. 21-5-107 to a licensed attorney, holding more than one elective position as city attorney for a first-or second-class city, be an impermissible regulation of the practice of law impinging on the Supreme Court's power to regulate the practice of law pursuant to Ark. Const. amend. 28?
In my opinion, the answer to this question is "no."
Amendment 28 of the Arkansas Constitution provides:
The Supreme Court shall make rules regulating the practice of law and the professional conduct of attorneys at law.
Implicit in your question is a concern that this constitutional assignment of authority might be exclusive, essentially insulating attorneys from any legislative regulation of their activities. In my opinion, this concern is unwarranted. Section 1D of the Procedures of the Arkansas Supreme Court Regulating Professional Conduct of Attorneys at Law provides:
Repealer. To the extent that former rules or existing provisions of the Arkansas Code Annotated are in conflict with these Procedures, they are hereby overruled and superseded. These Procedures shall not be deemed exclusive of, but supplemental to those provisions of the Arkansas Code Annotated that are not in conflict herewith.
(Emphasis added.) As this formulation suggests, although the Arkansas Supreme Court has priority in fashioning rules regulating the conduct of attorneys, its authority in this area is not exclusive. Accordingly, the Supreme Court has ruled that an attorney might be held to account for violating either a statute or a court rule regulating his conduct. Weems v. Supreme Court Committee on Professional Conduct, 257 Ark. 673, 685-B,523 S.W.2d 900 (1975) ("It has been proved to our satisfaction that the appellee, in addition to being guilty of conduct prohibited by Ark. Stat. Ann. 25-401 (Repl. 1962), violated certain of the Disciplinary Rules set forth in the Code of Professional Responsibility . . . recently adopted by this Court."). To be sure, in Ball v. Roberts,291 Ark. 84, 86, 722 S.W.2d 829 (1987), the Court declared that "Amendment 28 . . . grants the Supreme Court the exclusive power to regulate the practice of law and the professional conduct of attorneys." However, the court qualified this pronouncement as follows:
In McConnell v. State, 227 Ark. 988, 302 S.W.2d 805 (1957), the legislature passed an act requiring every court to grant a continuance upon request by a member or employee of the legislature within a specified period of time surrounding the legislative session. We found that the act violated the separation of powers doctrine because the act deprived the courts of the power to decide a judicial question. McConnell explained that the legislature could aid the courts in the execution of their judicial powers but cannot arbitrarily compel the use of that power. See also Weems v. Supreme Court Committee on Professional Conduct,257 Ark. 673, 523 S.W.2d 900 (1975).
291 Ark. at 86 (emphasis added). The operative principle expressed in Ball appears to be that the Court, relying both upon the authority granted in Amendment 28 and upon the separation-of-powers doctrine, will not brook any legislative contravention of a judicially established procedure. See Ark. Op. Att'y Gen. No. 90-217 ("If an act of the legislature . . . were to supersede a rule of the Supreme Court enacted pursuant to constitutional authority, a violation of the `separation of powers' doctrine would likely occur. See Arkansas Constitution, Art. 4, § 2."). However, in accordance with section 1D of the Procedures of the Arkansas Supreme Court Regulating Professional Conduct of Attorneys at Law, the Court further acknowledged that the General Assembly might legislate on matters affecting the practice of law without violating the separation of powers.[3] In apparent accordance with this limited legislative authority, the Code contains an entire chapter regulating admission to the bar and the practice of law, much of which has not been superseded by Supreme Court rules adopted pursuant to Amendment 28. A.C.A. §§ 16-22-201 through-501 (Repl. 1999 Supp. 2005). See, e.g., A.C.A. § 16-22-208(c) (Repl. 1999) (expressly acknowledging that the statutory prohibition against barratry is "in aid of and subordinate to the right of the Supreme Court of Arkansas to regulate and define the practice of law. . . ."). By way of illustrating the legislature's authority to address the issue of attorney remuneration, the legislature, without having been judicially challenged, has decreed, for instance, that an elected city attorney in a city of the first class shall "receive such salary as is prescribed by ordinance. . . ." A.C.A. § 14-43-313 (Supp. 2005). See also A.C.A. § 14-42-113 (Supp. 2005) (authorizing municipal officials to increase an elected official's salary during his term but authorizing a decrease only upon request by the official). In the absence of a Supreme Court directive to the contrary, I believe the legislature might likewise dictate that an elected city attorney be precluded from receiving compensation for that office if he has chosen to receive compensation for another elective office he simultaneously occupies.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] The term "employer" is defined as including a "public agency."29 U.S.C. 203(d). The term "public agency" is in turn defined as including "a political subdivision of a State." 29 U.S.C. 203(x).
[2] Neither of these subchapters covers policemen and firemen, who are subject to civil-service-system protection under a separate subchapter of the Code. A.C.A. § 14-51-101 et seq. (Repl. 1998 Supp. 2005).
[3] In Ark. Op. Att'y Gen. No. 93-342, one of my predecessors, relying on Ball, speculated that "statutes enacted after the adoption of Amendment 28 purporting to regulate the practice of law . . . are simply unconstitutional on separation of powers grounds." In my opinion, this formula, if read in isolation, may be too categorical, seemingly foreclosing legislation of the sort expressly permitted under section 1D of the Procedures of the Arkansas Supreme Court Regulating Professional Conduct of Attorneys at Law. In any event, the substance of my predecessor's opinion was considerably narrower, indicating only that a law purporting to favor veterans in the scoring of bar examinations impermissibly contravened standards adopted by the Supreme Court.