IN RE: Timothy D. WILLIAMS
(Arkansas Bar ID # 75140)

99-426                                    995 S.W.2d 349

Supreme Court of Arkansas
Opinion delivered July 22, 1999

*James A. Neal,* by: *Lynn Williams,* for petitioner.

*Respondent,* pro se.

TOM GLAZE, Justice. On April 15, 1999, the Arkansas Supreme Court Committee on Professional Conduct initiated this action by filing its petition requesting an order requiring Timothy D. Williams to show cause why he should not be held in contempt for violating Sections 7G(1), 7G(4), and 7G(6) of the Procedures of the Arkansas Supreme Court Regulating Conduct of Attorneys at Law. The Committee subsequently filed amended petitions on April 21 and June 29, 1999.

In response to the Committee's initial petition, we issued a per curiam on May 20, 1999, ordering Mr. Williams to appear and show cause why he should not be held in contempt as requested by the Committee. He appeared before us on June 24, 1999, and entered a plea of not guilty. We appointed attorney Scott Stafford as the court's master, who was directed to conduct a hearing to permit the Committee and Mr. Williams the opportu-

nity to present their respective cases, which was done on July 7, 1999. After hearing the Committee's and Mr. Williams's stipulations, witnesses, and arguments, the master filed his report with our court on July 13, 1999.

This contempt action emanated from the Committee's earlier proceedings, wherein it considered the complaint of Mrs. Bertha Henry that Mr. Williams had violated Rules 1.16(d), 3.4(d), and 8.4(d) of the Model Rules of Professional Conduct. Mrs. Henry employed Mr. Williams to establish a guardianship of a relative of Henry's. However, Mrs. Henry terminated Mr. Williams's services within less than one month, but when she requested a refund, Mr. Williams failed to give her one; nor did he give her an accounting of the fee he was paid. As a result, Mrs. Henry filed a lawsuit against Mr. Williams for the fee, and she also filed a complaint with the Committee. Mrs. Henry obtained a default judgment against Mr. Williams, which he never challenged, appealed, or satisfied. The Committee determined Mr. Williams violated the above Model Rules by failing (1) to return the unearned portion of Mrs. Henry's fee; (2) to respond to the Committee's and trial court's orders seeking and directing discovery requests; (3) to provide an accounting to Mrs. Henry; or (4) to satisfy Mrs. Henry's judgment against Mr. Williams. These violations resulted in the Committee entering its findings and order on February 3, 1999, whereby it suspended Mr. Williams's license for six months, fined him $250.00, and ordered him to make restitution of Mrs. Henry's fee, both fine and fee to be remitted within twenty days — February 23, 1999.

Within twenty days of his suspension, Mr. Williams was obligated to perform the following procedures:

(1) Notify all of his clients in writing and any counsel of record in pending matters, that he had been suspended;

(2) In the absence of co-counsel, notify all clients to make arrangements for other representation, calling attention to any urgency in seeking the substitution of another attorney;

(3) Deliver to all clients being represented in pending matters any papers or property to which they are entitled, or notify them

or co-counsel of a suitable time and place where the papers and other property may be obtained, calling attention to any urgency for obtaining the papers and other property;

(4) Refund any part of the fees paid in advance that had not been earned;

(5) File with the Court, agency, or tribunal before which any litigation is pending a copy of the notice to the opposing counsel, or adverse parties if no opposing counsel;

(6) Keep and maintain a record of the steps taken to accomplish the foregoing;

(7) File with the Supreme Court Clerk and Committee a list of all other state, federal, and administrative jurisdictions to which he is licensed or admitted to practice. Upon such filing, the Clerk shall notify those entitled of the suspension; and

(8) File an affidavit within thirty days of the suspension that he had complied with the provisions of the order and completely performed the foregoing or provide a full explanation of the reasons for his noncompliance. *See* Section 7I(1)-(8) of the Procedures Regulating Professional Conduct (1999).

Mr. Williams's failure to comply with the foregoing procedures subjected him to contempt of this court. *Id.* at 7I(9). Contempt under the Procedures Regulating Professional Conduct includes the following:

(1) *Willful disobedience of any Committee order, summons, or subpoena;*

(2) The refusal to testify on matters not privileged by law;

(3) Knowingly to testify falsely before the Committee;

(4) *Engaging in the practice of law during a period of suspension;*

(5) Engaging in the practice of law after a disbarment or surrender of license; or

(6) *Violation of the procedures by any person.*

*See* Section 7G(1)-(6) (1999) (emphasis added). At the July 7 show-cause hearing, the master heard testimony and argument

bearing on the Committee's charges that, after suspension, Mr. Williams (1) wilfully disobeyed a Committee order, (2) engaged in the practice of law, and (3) failed to comply with the Committee's procedures in violation of Section 7G(1), (4), and (6).

We appointed the master in this matter under Ark. Sup. Ct. R. 6(1), 6-5(a) (1999) and Ark. R. Civ. P. 53 (1999), and will accept the master's findings of fact unless they are clearly erroneous. *See Roberts v. Priest*, 334 Ark. 503, 975 S.W.2d 850 (1998). A finding of fact is clearly erroneous, even if there is evidence to support it, when, based on the entire evidence, the court is left with the definite and firm conviction that the master has made a mistake. *Id.*

In considering the Committee's charges, the master first heard and decided whether Williams had practiced law after he had been suspended, and the master found that he had. The Committee presented the testimony of Mrs. Lanelta Walker who averred that her initial meeting with Williams was on February 16, 1999, when she engaged him to obtain a divorce for her against her husband, James Walker. This February 16 meeting date would have been thirteen days after Williams had been suspended on February 3, 1999, and eight days after Williams received written notice of his suspension.[1] While Mr. Williams questions Mrs. Walker's accuracy as to the exact time when they first met, the master determined from Mrs. Walker's and James Walker's testimonies that a later, second meeting was held at which time Mrs. Walker brought Mr. Williams papers that Williams needed in order to prepare a property settlement agreement. In addition, the master, based on evidence before him, found Mrs. Walker had called Mr. Williams several times to determine if her divorce action had been filed. She said that he assured her the divorce suit would be filed "by the end of the week." The master further

---

[1] Mr. Williams strenuously argues the suspension notice was received by him two days after his initial meeting with Mrs. Walker. He also claims Mrs. Walker should have been informed by Williams's secretary that Mrs. Walker should hire another attorney. Again, the master resolved this conflict in evidence against Mr. Williams. Besides, Mr. Williams cannot place his Model Rule responsibilities onto his secretary. In addition, as relied on by the master, evidence exists showing Mr. Williams continued representing Mrs. Walker after his initial meeting with her.

found that Mr. Williams prepared the parties' agreement and dated it March 4, 1999. James Walker testified he went to Mr. Williams's office on March 4, which was the date he signed the agreement. Although Mr. Williams contended that he had told Mrs. Walker that he would not file her divorce until he was paid and that he denied ever scheduling a meeting to have James Walker sign the parties' settlement agreement, the master obviously discounted Mr. Williams's testimony, finding instead that Mr. Williams had continued his representation of Mrs. Walker after Mr. Williams's suspension. The master concluded, and the record supports the finding, that Mrs. Walker first learned of Mr. Williams's suspension from an article which appeared in the March 11, 1999 newspaper issue of the *Log Cabin Democrat.* In sum, we hold the evidence fairly supports the master's finding on this point, and in so holding, conclude it is contemptuous conduct which falls within Section 7G(4) as set out hereinabove.

█  We next turn to the master's finding that, at the time of Mr. Williams's suspension, Mr. Williams was representing clients in three other pending cases, one in Pulaski County Chancery Court, and one each in Faulkner County Chancery Court and Circuit Court. The master found the Committee proved that Mr. Walker had violated Procedures Section 7I(1) by failing to notify opposing counsel of Williams's suspension in the Pulaski County action and showed Mr. Williams had violated Procedures Section 7I(5) by failing to file with the two Faulkner County courts a copy of a written notice advising opposing counsel of his suspension. Again, from our review of the evidence, including Mr. Williams's stipulations and failure to show he filed required notices, we accept the master's findings that Mr. Williams violated Procedures Sections 7I(1) and (5). Having been fully aware of these procedures, but failing to comply with them, we must hold Mr. Williams in contempt. Procedures Section 7I(9).

The master found other procedural violations which we hold are supported by the record, which includes stipulations made by the Committee and Mr. Williams. Those violations are as follows:

*He failed to file with the Supreme Court Clerk and the Committee a list of all other state, federal, and administrative juris-

dictions to which he is licensed or admitted to practice as required by Procedures Section 7I(7).

*He failed to file an affidavit with the Committee that he has fully complied with the provisions of his order of suspension and completely performed the requirements of Procedures Section 7I, or provide a full explanation of the reasons for his noncompliance, as required by Procedures Section 7I(8).

*He failed to keep and maintain a record of the steps taken to accomplish the Procedures Sections 7I(1)-(5), as required by Procedures Section 7I(6).

*He willfully failed to pay any portion of the fine or restitution the Committee ordered.

■ Upon a careful review of the evidence, stipulations, arguments, and the master's report, we hold that, because he practiced law and willfully disobeyed Committee procedures and orders after his suspension, Mr. Williams is in contempt of court. In reaching this decision, we are mindful of Mr. Williams's references to his earlier bankruptcy proceeding and purported financial troubles, but we think the master's remarks are especially insightful on this point. In this respect, the master emphasized that Williams had established a pattern of ignoring procedures and orders, including his having made no effort to notify the Committee that he was in bankruptcy. Moreover, the Committee notes that Mr. Williams listed neither the restitution nor fine as a part of his debts in bankruptcy; nor did Williams pay one dollar towards discharging these amounts.

■ ■ In holding Mr. Williams in contempt, we note that he may be punished by incarceration, imposition of fine, or both. Section 2(C)(6) (1999); Cf. Street v. State, 331 Ark. 443, 959 S.W.2d 747 (1998).[2] While we hold Mr. Williams in contempt,

---

[2] We do not address the Committee's suggestion that our court also has the "inherent authority" to suspend or disbar an attorney in these circumstances. See Hurst v. Bar Rules Committee of the State of Arkansas, 202 ark. 1101, 155 S.W.2d 697 (1941); In Re Buffalo, 390 U.S. 544 (1968); In the Matter of Gwen G. Cavanchini, 160 F.3d 42 (8th Cir. 1998). However, we need not decide the issue now, since we ultimately conclude the Committee may first opt to take further action. Our reinvesting the Committee with

we do not immediately impose a penalty, but instead withhold its imposition until the Committee completes its actions and proceedings regarding sanctions. In this respect, we mention that Mr. Williams's suspension went into effect on February 3, 1999, which would ordinarily reflect Mr. Williams's eligibility to apply for reinstatement commencing August 3, 1999. As already determined by the Committee and the master, Mr. Williams has failed to comply with the required duties under Section 7I of the Professional Conduct Procedures so as to permit his reinstatement under Section 7K.[3] Thus, the suspension remains in effect pending further review by the Committee.

■ At this time, we reinvest the Committee with jurisdiction to conduct any further hearings it deems are needed and to reconsider the imposition of sanctions as may be necessary, particularly under Section 7 of the Procedures Regulating Professional Conduct. Upon filing its final petition, the Committee shall file its accompanying findings and order with this court so the court can consider and decide the proper penalty to be imposed in this

---

jurisdiction, too, avoids any due process or procedural arguments since the Committee has never asked this court to increase Mr. Williams's suspension or disbar him until the Committee filed its written brief herein.

[3] K. *Reinstatement.*

(1) Following any period of suspension from the practice of law, an attorney desiring reinstatement shall file with the Executive Director a verified petition requesting reinstatement.

(2) The petition for reinstatement shall be accompanied by proof of payment of an application fee of $100.00 to the Clerk.

(3) The petition for reinstatement shall set out the following:

(a) That the attorney has fully and promptly complied with the requirements of subsection I of this Section.

(b) That the attorney has refrained from practicing law during the period of suspension;

(c) That the attorney's license fee is current or has been tendered to the Clerk; and

(d) That the attorney has fully complied with any requirements imposed by the Committee as conditions for reinstatement.

(4) Any knowing misstatement of fact may constitute grounds for contempt, denial, or revocation of reinstatement.

(5) Failure to comply with the provisions of subsections I(7) and (8) of this Section shall preclude consideration for reinstatement.

(6) No attorney shall be reinstated to the practice of law in ths State until the Arkansas Supreme Court has received an affirmative vote by a majority of the Committee.

contempt proceeding. The Committee is directed to complete and return this matter for submission on or before October 14, 1999. Of course, Mr. Williams retains his right to appeal from any new and adverse sanction or issues which already had not, or could not have, been raised in prior proceedings.[4]

---

[4] Mr. Williams via his brief in this proceeding has attached copies of seven letters and an affidavit that purport to be the missing notices and an affidavit needed to comply with the procedures violated or discussed in this opinion. In its hearing of this matter, the Committee may consider these items, their relevance, and value.